The Honorable Carol Billings City Attorney City of Pine Bluff 200 East 8th Avenue Pine Bluff, Arkansas 71601
Dear Ms. Billings:
This official Attorney General opinion is issued in response to your request, pursuant to A.C.A. § 25-29-105(c)(3)(B), for an opinion as to whether certain records should be disclosed under the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 through -107).
You state that the City of Pine Bluff has received a request from a local newspaper for the blood alcohol results and the personnel file of a former police officer who has been terminated for a DWI-related accident. You indicate that you have not received the results of the requested blood alcohol test,[1] and that the personnel file contains nothing more than the job application, background check information, routine evaluations, disciplinary letters and letters of recommendation. You further indicate that the Chief of Police ordered an Internal Affairs investigation into the incident, but that records relating to this investigation are not contained in the personnel file. The newspaper has not separately requested records relating to the investigation, but you anticipate that such a request will be forthcoming when the newspaper realizes that such records are not contained in the personnel file.
Finally, you indicate that you intend to release the personnel file, with any exempt information deleted.
On the basis of the foregoing scenario, you have presented the following questions:
 (1) Is there a compelling public interest in the release of an Internal Affairs investigative file which investigates an officer's off-duty conduct culminating in a DWI-related accident and subsequent termination? Also, would the interviews conducted with other officers concerning this issue and contained in the terminated officer's investigative file be subject to release?
 (2) If the subject of the records cannot be contacted by telephone, in person, or by overnight mail, does the custodian go forward with release after 24 hours?
 (3) How long does the custodian wait once notice has been given before releasing the records?
 (4) How long does the subject have after notification to request an opinion of the Attorney General as to the release?
 (5) Who notifies the custodian that an Attorney General's opinion has been sought?
RESPONSE
Before addressing your specific questions, I must note that it is my opinion that your decision to release the personnel file, with exempt information deleted, is correct and consistent with the requirements of the FOIA.
I note, however, that your description of the records contained in the personnel file indicates that some of the records may constitute "employee evaluation or job performance records" within the meaning of the FOIA.
Because the disclosability of "personnel records" and the disclosability of "employee evaluation or job performance records" is determined upon the basis of two different standards, I will review the applicable standards for the purpose of providing you with guidance in evaluating the disclosability of the particular records contained in the requested personnel file.
PERSONNEL RECORDS
The Standard for Disclosability
Under the provisions of the FOIA, "personnel records" are subject to disclosure except to the extent that disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. §25-19-105(b)(10).
What is a Personnel Record?
The FOIA does not define the phrase "personnel records," nor has the term been defined judicially. I will point out, however, that Professor John Watkins, the leading scholarly commentator on the Arkansas FOIA, has provided some guidelines for determining whether records constitute "personnel records." Professor Watkins suggests that the records maintained in personnel files be considered as a starting point for determining what constitutes a "personnel record." The records maintained in such files, Professor Watkins points out, include applications for employment, resumes, grade transcripts, payroll related documents (including information as to reclassifications, promotions, or demotions), transfer records, health and life insurance forms, performance evaluations and ratings, letters of recommendation, complaints, requests for leave without pay, certificates for advanced education or training programs, and legal documents (such as garnishment orders and subpoenas). WATKINS, Arkansas Freedom of Information Act (mm Press, 2d ed. 1994) 125-26. Again, however, Professor Watkins names these personnel file records as constituting only a starting point, and he notes that the language of the FOIA is broad enough to encompass other records pertaining to personnel. He specifically recommends, for example, that materials such as interview notes, records showing annual leave and sick leave, equal employment opportunity grievance files, workers' compensation documents, and medical records, although not included in personnel files, also be considered personnel records. (It should be noted that some of the records mentioned above may be subject to specific exemptions set forth in other sections of the FOIA, including the exception for employee evaluation and job performance records, discussed in a later section of this opinion.)
What is a "Clearly Unwarranted Invasion of Personal Privacy"?
The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the Arkansas Supreme Court has adopted a balancing test. The court stated in Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992):
 The fact that section § 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section § 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section § 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
Young, 308 Ark. at 598.
In Young, the court upheld the denial of access to the names of police officers participating in the lieutenant promotion examination proceedings, but allowed release of the records of the examination with the names deleted. The court relied upon federal case law that finds a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidates' lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidates' names deleted.
Other federal case law, like that relied upon in Young, delineates other types of information, the release of which might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: Personal histories, religious affiliations of employees,Church of Scientology v. Department of Defense, 611 F.2d 738 (9th Cir. 1979); citizenship, United States Department of State v. Washington PostCo., 456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10
(D.C. Cir. 1980); social security numbers, Swisher v. Dept. of the AirForce, 660 F.2d 369 (5th Cir. 1981); information about family life,Providence Journal Co. v. F.B.I., 460 F. Supp. 778, reversed on distinct grounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption,Rural Housing Alliance v. Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, date and place of birth, salaries of public employees, training or education background, and work experience. Kruzonv. Department of Health Human Services, 649 F.2d 65 (1st Cir. 1981);Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980).
Finally, it should be noted that this office has consistently taken the position that the fact that the subject of the records may consider the release of the records to be a clearly unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. 94-198, 94-178 and 93-055. See also WATKINS, The Arkansas Freedom of InformationAct (mm Press, 2d ed. 1994) at 126.
EMPLOYEE EVALUATION OR JOB PERFORMANCE RECORDS
The Standard for Disclosability
Under the provisions of the FOIA, "employee evaluation or job performance records" (including "preliminary notes and other materials") are disclosable only if the following three conditions have been met: (1) There has been a final administrative resolution of any suspension or termination proceeding; (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and (3) There is a compelling public interest in the disclosure of the records in question. A.C.A. § 25-19-105(c)(1).
What is An "Employee Evaluation or Job Performance Record"?
The FOIA does not define the phrase "employee evaluation or job performance record," nor has the phrase been construed judicially. I cannot formulate an official definition for undefined statutory language. The custodian of the records must make a factual determination as to whether records constitute employee evaluation or job performance records. Formal, written employee evaluations are of course included. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ops. Att'y Gen. Nos. 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
Final Administrative Resolution/Records As a Basis for Termination
The question of whether there has been a final administrative resolution of the termination at issue and of whether the requested records formed a basis for that termination are clearly questions of fact that can be readily determined. The requested records can be disclosed only if those questions can be answered affirmatively, and if it is determined that there is compelling public interest in their disclosure, as discussed below.
Compelling Public Interest
The phrase "compelling public interest" is not defined in the FOIA. Clearly, whether there is a "compelling public interest" in the release of particular records will depend upon all of the facts and circumstances attendant to the particular case. Professor Watkins has provided some guidelines for determining whether such an interest exists. He states: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest. . . .' The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." WATKINS, The Arkansas Freedom of Information Act
(mm Press 2d ed. 1994) at 135. In this regard, Professor Watkins also states: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 137. Professor Watkins has also noted that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. WATKINS, supra at 136 (noting that "[a]s a practical matter, courts may be more likely to find such an interest when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
The foregoing discussion sets forth the standards that you should consider in evaluating the particular records contained in the personnel file that has been requested and in determining which records should be released, and which, if any, are exempt from disclosure.
A CONSTITUTIONAL ISSUE
In addition, I must note that you should be cognizant of a possible constitutional issue. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the Freedom of Information Act, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. The court further held that if these attributes apply to the matters in question, it must then be considered whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the individual's privacy interest in their non-disclosure.
In making your disclosure decisions, you should specifically consider whether the requested records contain information that meets the criteria set forth in McCambridge.
Having reviewed the standards under which the requested records should be evaluated, I will proceed to address your specific questions.
Question 1 — Is there a compelling public interest in the release of anInternal Affairs investigative file which investigates an officer'soff-duty conduct culminating in a DWI-related accident and subsequenttermination? Also, would the interviews conducted with other officersconcerning this issue and contained in the terminated officer'sinvestigative file be subject to release?
I am unable to render an opinion in response to Question 1, because the question is, at this point, hypothetical. That is, no request has actually been presented for the Internal Affairs investigative file in question. The Attorney General is constrained under the requirements of A.C.A. § 25-19-105(c)(3)(B) to render an opinion regarding the disclosability of records that have actually been requested.
This office, has, however, previously rendered opinions that address the issues that you have raised in Question 1. A review of such opinions may be helpful to you in determining the appropriate course of action in the event that a request for the Internal Affairs investigative file is presented. See, e.g., Ops. Att'y Gen. Nos. 96-324; 96-257; 96-168; 96-033; 94-127; and 94-119.
Question 2 — If the subject of the records cannot be contacted bytelephone, in person, or by overnight mail, does the custodian go forwardwith the release of the records?
Although the FOIA does not specifically address the question that you have raised, it is my opinion that if the subject of the records cannot be contacted by telephone, in person, or by overnight mail, the custodian can nevertheless go forward with the release of the records, provided that the custodian has made all of the required attempts at contacting the subject of the records, including mailing the overnight notice to the subject's last known address.
The FOIA does not require actual notice of the request to the subject of the requested records. Rather, it requires that the custodian of the records make various attempts to notify the subject. The FOIA specifically requires the custodian of the records to "make efforts to the fullest extent possible to notify the person making the request and the subject of the records" of his or her decision regarding release. A.C.A. § 25-19-105(c)(3)(A). The FOIA's use of the phrase "to the fullest extent possible" appears to contemplate that actual notification may not, in fact, be possible.
The FOIA does not require that the process stop in the event that the subject does not receive notice. The only limitation which is placed upon the custodian's release of the records after the custodian makes all required attempts at notice is the limitation which goes into effect if a request is made for an Attorney General's opinion. (As discussed in response to Question 3 below, if such a request is made, the custodian must wait until the Attorney General has rendered the opinion, i.e., three working days, before releasing the records.) No other limitation upon release is stated.
I therefore conclude that the custodian may go forward with release of the records, even if the subject cannot be contacted by telephone, in person, or by overnight mail.
Question 3 — How long does the custodian wait once notice has been givenbefore releasing the records?
Again, the FOIA does not specifically address this question in the context of a scenario in which no request for an Attorney General's opinion is presented.[2] This is therefore a matter that can be clarified only by legislative action or by judicial interpretation. For this reason, I am unable, in the absence of such clarification, to opine conclusively in response to the question.
Pending legislative or judicial clarification, I suggest that a reasonable approach to the issue would be to balance the two overriding factors that are at stake: the public policy of the FOIA, and the interests of persons whose records have been requested. Using this approach, I find it reasonable, as explained more fully below, for the custodian to wait up to 72 hours before releasing the records, if notification is not accomplished within the first 24-hour notification period and must be made by overnight mail, and if no request for an Attorney General's opinion is made.[3] (Of course, a shorter waiting period will follow if notification is accomplished within the first 24-hour notification period.)[4]
The Arkansas Supreme Court has stated that the FOIA is to be interpreted liberally to accomplish the purpose of promoting free access to public information. Johninson v. Stodola, 316 Ark. 423, 872 S.W.2d 374 (1994). At the same time, the FOIA makes provision to protect the privacy interests of persons whose records have been requested. It does so by requiring that the custodians of such persons' records make efforts to notify such persons "to the fullest extent possible" that their records have been requested, A.C.A. § 25-19-105(c)(3)(A), and by allowing such persons the opportunity both to request an Attorney General's opinion regarding the release of the records before the records are released, and to appeal any determination regarding their release. A.C.A. §25-19-105(c)(3)(B).
The FOIA's procedure for notification and release provides some guidance as to what the drafters of the FOIA may have deemed a reasonable waiting period before the release of records. Under that procedure, the custodian is first given 24 hours from the time of the request within which to determine whether to release the records and to attempt to notify the subject. Second, if notice is not accomplished within that 24 hour time period, the custodian is required to send notice to the subject by overnight mail. This overnight mailing would add at least another 24 hours to the waiting period. If the subject of the records wishes to request an Attorney General's opinion regarding the release of the records, he or she must make the request "immediately." The FOIA does not define the "immediately," as used in A.C.A. § 25-19-105(c)(3)(B). It is therefore appropriate to give the term its ordinary meaning in common usage. Cheqnet Systems v. State Bd. of Collection Agencies,319 Ark. 252, 890 S.W.2d 595 (1995). The Merriam-Webster Dictionary defines the term "immediately" to mean "made or done at once."
The question then, of course, arises as to what constitutes "at once." One approach to answering this question would be to consider the time frame within which other parties are required to act under the FOIA. The custodian of the records must act within 24 hours in determining whether to release the records and in attempting notification of the subject. Because the impact upon the custodian of release of the records is not as "immediate" as the impact upon the subject, I find it reasonable to read the term "immediately," as applied to the subject, to encompass a time frame that is no greater than that within which the custodian must act. I therefore find it reasonable to expect the subject of the records to present a request for an Attorney General's opinion within the same time frame that the custodian of the records is given to notify the subject — 24 hours from the time of receipt of notice. This additional 24 hours totals a maximum of 72 hours from the time the custodian first received the request for the records, if notification is not accomplished in the first 24-hour period and must be made by overnight mail. (As indicated previously, the waiting period will be shorter if notification is accomplished in the first 24-hour period. See Footnote 4.)
This balancing approach that I have suggested is merely a suggestion. I reiterate that the issue you have raised is one that is not addressed in the FOIA and that can only be resolved by legislative or judicial clarification. Nevertheless, I find that a maximum 72-hour waiting period from the time of receiving the request for the records (if notification must be made by overnight mail) would accommodate both the openness policy of the FOIA and the privacy interests of persons whose records have been requested.
Question 4 — How long does the subject have after notification to requestan opinion of the Attorney General as to the release?
As indicated in response to Question 3, the FOIA states only that the subject must request an Attorney General's opinion "immediately" — without defining the term "immediately." Because the FOIA does not address the issue you have raised, I cannot opine definitively as to this issue. This issue, like that raised in Question 3, is one that can be clarified only legislatively or judicially.
Nevertheless, under the Arkansas Supreme Court's rules of statutory interpretation, I find it reasonable, as discussed in response to Question 3, to read the term "immediately" giving it its ordinary meaning in common usage. Cheqnet Systems v. State Bd. of Collection Agencies,319 Ark. 252, 890 S.W.2d 595 (1995). The term's ordinary meaning can be determined by reference to the Merriam-Webster Dictionary, which defines the term to mean "made or done at once." As suggested in response to Question 3, one approach to determining what constitutes "at once" would be to consider the time frame within which other parties are required to act under the FOIA. Holding the subject of the records to the same standard that is applied to the custodian with regard to notification, I find it reasonable to interpret "at once," or "immediately" to mean that the subject should present the request for an Attorney General's opinion within 24 hours of receipt of the notice of the request.
Question 5 — Who notifies the custodian that an Attorney General'sopinion has been sought?
It is my opinion that no one is required to notify the custodian of the records that an Attorney General's opinion has been sought. The FOIA is silent as to this subject. I note, however, that it would be in the best interest of the subject of the records to notify the custodian that a request for an opinion has been made, and that it would be in the best interest of the custodian of the records to determine whether a request has been made before proceeding to release the records.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] You state that your office does possess the results of a separately conducted blood alcohol test, which is currently contained in the file of an on-going, incomplete criminal investigation. The test was conducted by a doctor and is part of the subject's medical records, which were subpoenaed as a part of the criminal investigation. It is my opinion that both the medical record containing the blood alcohol test and the criminal investigative file are exempt from disclosure under A.C.A. §25-19-105(b)(2) and (6).
[2] The FOIA clearly delineates the waiting period (three working days) in scenarios where a request for an Attorney General's opinion is presented. See A.C.A. § 25-19-105(c)(3)(B).
[3] The custodian's waiting period may also be affected by judicial review, pursuant to A.C.A. § 25-19-105(c)(3)(C), of the custodian's or the Attorney General's decision, or by the fact that the requested records are in active use or in storage, see A.C.A. § 25-19-105(e).
[4] Under my suggested approach, if notification is accomplished within the first 24-hour notification period, the custodian should wait an additional 24 hours before releasing the records, in order to allow the subject of the records an opportunity to request an Attorney General's opinion regarding release. See response to Question 4.