Ronald C. Wilson, Esq. Wilson Associates, P.A. 310 Mid-Continent Plaza, Suite 110 West Memphis, AR 72301
Dear Mr. Wilson:
I am writing in response to your request for my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), regarding the possible release of certain records under the Arkansas Freedom of Information Act ("FOIA"), A.C.A. §§25-19-101 through -109 (Repl. 1994 Supp. 2003 Acts 2005, No. 295). You report that you are the legal counsel for a former employee of the City of West Memphis who is the subject of an FOIA request by a local newspaper. You further report that the newspaper "has requested a copy of the complete file of the Internal Affairs investigation from my client's personnel file with the City of West Memphis." The West Memphis City Attorney, as the custodian of these documents, has provisionally determined to release two documents: (1) a transcript of an interview of your client by an investigator associated with the West Memphis Internal Affairs Department; and (2) a report by the investigator to the mayor of West Memphis summarizing the course of the investigation. You question the custodian's decision that these documents are subject to disclosure under the FOIA and have asked for my opinion on this matter. Having reviewed the documents at issue, I believe that the disclosability of the documents will depend on certain factual considerations that only the custodian is situated to determine.
In my opinion, based upon the content of the records and the particular circumstances surrounding their creation, I believe the documents at issue are "employee evaluations or job performance records" under the FOIA. A.C.A. § 25-19-105(c)(1). The FOIA does not define the phrase "employee evaluation or job performance record," nor have the courts found occasion to do so. The Attorney General has consistently taken the general position that documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, and letters related to promotions and demotions are "employee evaluations or job performance records." See, e.g., Ops. Att'y Gen. Nos.2001-203; 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
As I noted in Ark. Op. Att'y Gen. No. 2003-078, the category of "employee evaluations or job performance records" includes the following:
 [R]ecords that were generated as part of an investigation of allegations of the misconduct of an employee, and that detail incidents that gave rise to an allegation of misconduct. See, e.g., Op. Att'y Gen. 2001-063 (Internal Affairs file that was generated at the instance of the Department in the course of investigating a complaint against an employee constitutes `employee evaluation/job performance records within the meaning of the FOIA).
As my predecessor noted in Ark. Op. Att'y Gen. No. 99-339:
 This exemption is limited to records created by or at the behest of the public employer. . . . See, e.g., Op. Att'y Gen. 98-001 (documents received from third parties and not created by the employer as a part of an investigation are not "employee evaluation or job performance records, but might be classified as "personnel records"); Op. Att'y Gen. 96-342 (records not made or given as part of the employing agency's inquiry or investigation are not "job performance records" and are generally subject to disclosure absent the presence of "intimate information" that might give rise to a privacy interest); and Op. Att'y Gen. 96-257 (same). See also Op. Att'y Gen. 99-026 (agreeing with my predecessor's conclusion that documents may be classified as "employee evaluation or job performance records if they were created in the evaluation of the employee's performance"). Documents not created in the evaluation process do not come within the rationale behind the § 25-19-105(c)(1) exemption. That exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See WATKINS, The Arkansas Freedom of Information Act (mm Press, 3d ed. 1994) at 141-142.
This office has also taken the position that records that were generated as part of an investigation of allegations of the misconduct of an employee, and that detail incidents that gave rise to an allegation of misconduct, should be deemed the "employee evaluation/job performance records" of that employee. See Ops. Att'y Gen. Nos. 2001-063; 2000-231; 2000-203; 2000-130; 1999-361; 1999-359.
The present case is distinguishable from previous "employee evaluation" opinions issued by this office in that the records at issue deal with conduct outside the scope of the subject's employment. However, in this case, it is apparent from the records themselves that they were created specifically at the behest of the City of West Memphis in order to evaluate your client's suitability as an employee. The documents you have provided reflect that they were created by the City of West Memphis for the sole purpose of assisting the mayor in determining whether it would be appropriate to take some job action with respect to your client. Moreover, the transcribed interview was conducted by a city official under the express condition that its substance would be used only to make a determination regarding your client's employment. Under these specific circumstances, even though the documents would not appear to qualify as "job performance records," since they concern conduct outside the workplace, I believe they fall within the scope of the "employee evaluation" exemption.
The FOIA dictates that employee evaluations be released only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).[1]
You have informed me that your client has resigned his position with the City of West Memphis. Accordingly, it would appear that the first prong of the test just recited has not been met, suggesting that the custodian of records should not release the documents at issue. This office has previously opined on numerous occasions that this should be the result even if the employee voluntarily resigned in the face of a disciplinary challenge. See, e.g., Ark. Ops. Att'y Gen. Nos. 2004-219; 2002-235; 2001-246; 98-188; 97-063.
However, other previous opinions leave open the possibility that a coerced resignation might amount to a constructive termination. As I further noted in Opinion No. 2004-219:
 [W]ithout opining on the issue, one of my predecessors at least acknowledged the possibility that "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1)." Ark. Op. Att'y Gen. No. 97-063. See Dobbins v. Everett, 2 Ark. App. 254, 620 S.W.2d 309 (1981) (employee who, faced with certain termination, took less embarrassing option of resignation did not quit voluntarily and without good cause for purposes of employment compensation decision).
I am not a finder of fact and lack information to determine whether your client's resignation might be deemed a "forced, coerced or constructive termination" as discussed above. I will only note that if the custodian based his determination in part on a conclusion that your client's resignation amounted to a constructive termination, that conclusion would be consistent with the passage just quoted.[2] However, I am not situated to determine whether all the facts considered together would support any such conclusion. Only the custodian of records, after inquiring into the facts, will be situated initially to make this determination.
With respect to the second prong of the test set forth at A.C.A. §25-19-105(c)(1), the determination of whether the records at issue formed a basis for the employer's disciplinary action will likewise be necessarily factual. Again, this determination should initially be made by the custodian in consultation with the employer.
With respect to the third prong of the test set forth at A.C.A. §25-19-105(c)(1), the FOIA does not define the phrase "compelling public interest." Clearly, whether there is a "compelling public interest" in the release of particular records will depend upon all of the facts and circumstances attendant to the particular case. Leading commentators on the FOIA have provided some guidelines for determining whether such an interest exists. See J. Watkins and R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm press: 4th ed. 2004). Watkins and Peltz remark: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ."Id. at 205. They also point out: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. at 204-205. In this regard, Watkins and Peltz also state: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 207. They further note that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
Based upon my review of the documents you have supplied me, I believe a compelling public interest in disclosure in all likelihood exists. However, the custodian must ultimately make this determination based upon a consideration of all the facts. Having ventured this opinion, I must stress again that the custodian must determine that all three prongs of the test set forth at A.C.A. § 25-19-105(c)(1) have been met before he releases the records at issue.
With respect to the public's compelling interest in disclosure of the circumstances, I will note that this interest will in likelihood be satisfied upon the completion of any criminal investigation. As I observed in Ark. Op. Att'y Gen. No. 2003-336:
 Although the records of "undisclosed investigations" by law enforcement agencies are exempt from disclosure under the FOIA, see A.C.A. § 25-19-105(b)(6), this exemption does not apply to investigations that are completed. See Johninson v. Stodola, 316 Ark. 423, 872 S.W.2d 374
(1994). The question of whether any particular investigation is complete is a question of fact that must be determined on a case-by-case basis, see Op. Att'y Gen. No. 2002-188, taking into consideration the views of all authorities involved in the investigation, including both the police and the prosecutor. See Op. Att'y Gen. No. 2002-303.
The custodian of any criminal investigative file would need to apply this test in order to determine whether to release the file. In the present case, if the custodian of the records at issue here determines that they are subject to disclosure, he will also need to apply this test, reviewing the records to determine if portions thereof are the product of an ongoing criminal investigation and, if so, redacting that information prior to releasing the records. See Ark. Op. Att'y Gen. No. 2002-005
(discussing the redaction of ongoing criminal investigation records contained within employee evaluations).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: JD/cyh
[1] This standard differs considerably from the standard applicable to "personnel records," which are exempt from disclosure under the FOIA if their release would constitute a "clearly unwarranted invasion of personal privacy." A.C.A § 25-19-105(b)(12).
[2] I recognize the alternative possibility that the custodian considered the documents at issue "personnel records" whose disclosure would not amount to a "clearly unwarranted invasion of personal privacy." As noted in the text of my opinion, I consider the documents "employee evaluations," not "personnel records."