Mike HENGEL and Donrey, Inc., d/b/a Pine Bluff
Commercial *v.* CITY OF PINE BLUFF and Chief of Police
Bobby Brown

91-108                                    821 S.W.2d 761

Supreme Court of Arkansas
Opinion delivered December 23, 1991

Ramsay, Bridgforth, Harrelson & Starling, by: Spencer F. Robinson and David M. Olive, for appellants.

Robert Tolson, Jr., for appellees.

STEELE HAYS, Justice. This cause originated as a Petition for Access to Records Under the Arkansas Freedom of Information Act (FOIA) filed in the Jefferson Circuit Court. The petition was filed by appellants, Mike Hengel and Donrey, Inc., d/b/a Pine Bluff Commercial. It sought to compel the City of Pine Bluff and Police Chief Bobby Brown to provide access to the jail log, shift sheet, incident and arrest reports and any other records prepared by the offices of the City of Pine Bluff. The records requested were documents regarding the arrest of a suspect in the December 13, 1990, murder of Lenora King.

Acting on a tip that a suspect had been arrested in the King case and having checked police records on December 21st and 22nd without finding mention of an arrest, police reporter DeAnn Smith went to the police department on December 24, 1990, and requested a copy of the jail log. The sergeant informed her that the record would not be available until Wednesday, December 26th at 8:00 a.m. the next regular business day.

Later that day a police officer confirmed there had been an arrest and Smith was told she needed to talk to the information officer, Captain Mossburg. Mossburg was uncertain whether there had been an arrest and told Smith she should talk to Captain Adkins, the shift captain, who said he was not aware of an arrest. Adkins refused to let Smith see the jail log and referred her to Chief Bobby Brown. Chief Brown said he did not know if there had been an arrest and doubted whether anyone could provide her with that information. Ms. Smith turned her information over to a fellow reporter, Scott Ritter, who called Chief Brown and requested a copy of the jail log on December 24, 1990. Brown refused to permit inspection of the jail log because he was concerned that it would jeopardize the case.

Smith returned to the police department on December 26th and jail logs covering Friday afternoon of December 21, 1990, through December 26 were shown to her. The logs did not reflect an arrest in the Lenora King murder. Smith then requested the jail log for Thursday December 20th through Friday afternoon December 21st. The logs were finally released to her and there was an arrest for capital murder, however, the name and address of the person had been blacked out. Upon further inquiry, Smith was referred to the prosecuting attorney's office and was informed that charges had been filed earlier that day against James Jones, Jr. for the murder of Lenora King. Smith subsequently learned that Jones had been arrested on December 20, and jailed on December 21st.

After a hearing the court held that the jail log, shift sheet, incident reports, arrest reports and all other reports and records kept in the usual operation of the Pine Bluff Police Department are public records within the meaning of the Arkansas FOIA, Ark. Code Ann. § 25-19-105 (1987), and should be open to inspection and copying during the regular hours of the custodian of the records. Despite its finding that the documents are public records, the court further found that the appellees did not violate the FOIA because release of the information to the public would jeopardize an ongoing investigation, therefore, the records fall within the scope of the "undisclosed investigation" exception to the Act.

The question is now before this Court on appeal by the Pine Bluff Commercial. Three issues are presented: (1) whether the trial court erroneously applied the "undisclosed investigation" exception to the records requested; (2) whether the Pine Bluff Police Department violated the FOIA when it excised portions of a public record; and (3) whether the trial court erred in holding that the police department's public records only have to be made available for inspection between 8:00 a.m. and 4:00 p.m., Monday through Friday, excluding holidays.

The trial court held, and the parties do not dispute, that the jail logs, arrest records and shift sheets are "public records" for purposes of the FOIA. The appellants assert, however, that these records are not "undisclosed investigations" and, therefore, are not exempt from disclosure.

The Arkansas Freedom of Information Act, Ark. Code Ann. § 25-19-105(a) and (b)(6) (Supp. 1991) provides:

> (a) Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during regular business hours of the custodian of the records.

> (b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:

> (6) Undisclosed investigations by law enforcement agencies of suspected criminal activity.

The newspaper contends that it has a statutory right of routine access to the police department jail log, arrest records and shift sheet.

The record is unclear as to the precise form of these documents however, the information contained in them is apparent. The jail log includes the time a suspect is brought to the jail, the name of the arresting officer, the charge and the time and date of booking. The arrest record contains pertinent personal information about the person arrested such as the suspect's name, sex, race and date of birth, what the person is charged with, and it may or may not state facts surrounding the arrest.

Upon arrival for duty a jailer on each shift inspects the shift sheet listing the people that are incarcerated to make sure all prisoners are accounted for. The shift sheet also includes what each person was arrested for, the prisoner's sex, who the trustees are that are available for work, and the names of the jailer and matron.

Prior decisions of this Court that deal with the "undisclosed investigation" exception to the FOIA are not helpful because they either involved a request for records which were clearly "investigative" or concerned an investigation that had been closed and, thus, outside the exception. *Arkansas Gazette* v. *Goodwin*, 304 Ark. 204, 801 S.W.2d 284 (1990); *Martin* v. *Musteen*, 303 Ark. 656, 799 S.W.2d 540 (1990); *McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989); *City*

*of Fayetteville* v. *Rose*, 294 Ark. 468, 743 S.W.2d 817 (1988).

While we find no cases that address this issue, there are opinions of the Attorney General that conclude that certain arrest reports are subject to disclosure under the FOIA. *Arkansas Att'y Gen. Op. 87-115* (reports concerning traffic violations); *Arkansas Att'y Gen. Op. 82-59* (arrest records). According to J. Watkins, *The Arkansas Freedom of Information Act* 72 (1988), the records that the Attorney General has concluded are not exempt under subsection (b) (6) are "apparently not sufficiently investigative in nature to qualify for the exemption, since they are not internal 'work product' materials containing details of an investigation." Professor Watkins reason that withholding such records would not serve any of the policy goals underlying the law enforcement exemption even though privacy or reputational interests of the suspect may be implicated. He concludes that those interests are outweighed by the strong public concern with official government action that marks the beginning of the criminal justice process. *Id.*

Almost every state has some type of open records law similar to the Arkansas FOIA and although our provision is unique, other states have provisions which except records dealing with the investigation of crime. *See generally City of Fayetteville* v. *Rose, supra; Caledonian Record Publishing Co.* v. *Walton*, 154 Vt. 15, 573 A.2d 296 (1990); *A Practicable Review of State Open Record Laws*, 49 Geo. Wash. L. Rev. 720 (1981). In analyzing this issue we are guided by decisions from other states dealing with arrest records. With some exceptions, the cases dealing with arrest records and the like have generally held such records not to be exempt from public disclosure. K. Corier Karnezis, Annotation, *Validity, Construction, And Application of Statutory Provisions Relating To Public Access To Police Records*, 82 A.L.R.3d 19 (1978). The Vermont Supreme Court, for example, concluded that arrest records are not records dealing with the detection and investigation of crime under the exception from disclosure within the Vermont Access To Public Records Act, but rather, are the product of such investigation subject to required disclosure under the Act. *Caledonian Record Publishing Co.* v. *Walton*, 154 Vt. 15, 573 A.2d 296 (1990).

Likewise, in *State* v. *Lancaster Police Dept.*, 38 Ohio St.3d

324, 528 N.E.2d 175(1988), the court held that the arrest record docket book, which is a continuous chronological listing of the daily arrest, detention and citation activity of the Lancaster Police Department, is not a confidential law enforcement investigatory record within the exception of the Ohio Public Record Law, and is therefore subject to disclosure.

Particularly instructive is a Texas case in which the Houston Police Department maintained several different types of records relating to criminal activities that a newspaper sought access to the under the Texas Open Records Act. *Houston Chronicle Publishing Co.* v. *City of Houston*, 531 S.W.2d 177 (Tex. Civ. App. 1975). The police department refused to disclose the information relying on the provision of the Open Records Act which exempts from disclosure "records of law enforcement agencies that deal with the detection and investigation of crime. . . ." The Texas Court of Civil Appeals construed the exception to include only such matters as "officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests." *Id.* at 187. The court reasoned that providing access to such records might reveal the names of informants, creating a threat of intimidation of potential prosecution witnesses and endanger the State's position in criminal prosecutions by the use of such materials to the disadvantage of the prosecution. *Id.* The court then held that the offense report, which included such documentation as that information that the court construed as fitting into the exception to the Act was not open to the public. The court concluded, however, that the arrest records, which contained information about an arrestee such as name, race, aliases, place and date of birth, physical description, history of arrests, the offense charged with, time of arrest, booking number and arresting officers, were an entirely different matter and must be disclosed in the public's interest.

In addition to the guidance provided by *Caledonian Record Public Co.*, *Lancaster Police Dept.*, and *Houston Chronicle Publishing Co.*, there are additional factors that persuade us that the records requested in this case should be open to the public under the Arkansas FOIA. First, the record is insufficient to sustain a holding that the jail log, arrest record, and shift sheet

were investigatory in nature to fit within the exception to public disclosure. While the testimony elicited provides a description of what information each record contained, that information does not indicate that the records are sufficiently investigative in nature to qualify for the exemption. There was testimony by Chief Brown explaining that there were two suspects in the case and the department was trying to keep Jones' name out of the paper so that the other suspect would not abscond to avoid apprehension, but, there was no proof regarding the existence of another suspect nor were there other arrests in the Lenora King murder. The appellees argue that the decision to reveal the name of a suspect should be based on whether or not it would hinder an investigation and that assessment should be made on a case by case basis by the officer in charge of the investigation. But that reasoning would broaden the "undisclosed investigation" exception and that comes within the province of the legislature rather than this Court.

■ Second, the rules of statutory interpretation that have been applied to the Arkansas FOIA convince us these records must be disclosed. In the first opinion interpreting the FOIA this Court ruled that the Act was passed for the public benefit and was to be liberally construed. In *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968) the Court stated:

> Whether a statute should be construed narrowly or broadly depends upon the interests with which the statute deals. As a rule, statutes enacted for the public benefit are to be interpreted most favorably to the public. In the act now before use the General Assembly clearly declared the State's public policy: "It is vital in a democratic society that public business be performed in an open and public manner." We have no hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.

*Id.* at 404-405, 432 S.W.2d at 755; *See also* J. Watkins, *The Arkansas Freedom of Information Act* 4-8 (1988).

The Court in *Laman* also concluded that in accordance with this principle, FOIA exceptions are to be narrowly construed.

That holding was reaffirmed in *Ragland* v. *Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986):

> We conclude that the objectives of the FOIA are such that whenever the legislature fails to specify that any records in the public domain are to be excluded from inspection, or is less than clear in its intendments, then privacy must yield to openness and secrecy to the public's right to know the status of its own affairs. We hold, therefore, that the burden of confidentiality rests on the legislation itself, and if the intention is doubtful, openness is the result.

*Id.* at 85-86; 702 S.W.2d at 25; *See also* Watkins, *supra.*

■ Accordingly, we hold that for purposes of the FOIA the jail log, arrest records and shift sheet are not records containing undisclosed law enforcement investigations and are subject to disclosure pursuant to Ark. Code Ann. § 25-19-105 (1987).

■ The Commercial also contends that it is a violation of the FOIA to alter public records, or to black out information in the jail log as occurred here. We have no hesitation in agreeing with that contention. To expunge, excise or alter in any way information open to public inspection is a denial of the rights granted by the FOIA, thus, clearly in violation of the Act.

■ Appellants' final argument is that it was error for the circuit court to hold that the public's access to the records of the Pine Bluff Police Department was limited to 8:00 a.m. to 4:00 p.m., Monday through Friday, excepting legal holidays. We cannot sustain that holding. The Arkansas FOIA provides that public records are to be open to inspection "during regular business hours of the custodian of the records." The Pine Bluff Police Department operates twenty-four hours a day, seven days a week. When the nature of an agency of the public of necessity operates twenty-four hours a day, it follows in the absence of some showing to the contrary that those are its "regular business hours." That being so, its records must be available for reasonable inspection at all times during those hours of operation.

Reversed.