Michael JOHNINSON v.
Mark STODOLA, Prosecuting Attorney

93-1062                                        872 S.W.2d 374

Supreme Court of Arkansas
Opinion delivered March 21, 1994

*William R. Simpson, Jr.*, Public Defender, by: *Jerry J. Sallings*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Dearden*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Michael Johninson was charged with first degree murder. He contended that five witnesses to that murder were in the same gang as the victim of the shooting. On December 10, 1992, his attorney made a Freedom of Information request pursuant to Ark. Code Ann. § 25-19-101, *et seq.* (Repl. 1992), to the prosecutor, appellee Mark Stodola, for access to the prosecutor's files or computer compilations to determine gang membership. Counsel contended that he only wanted to know gang membership and was not interested in information on gang activity. The prosecutor denied the request. Johninson then appealed the denial to circuit court under Ark. Code Ann. § 25-19-107(a) (Repl. 1992). On March 1, 1993, after hearing testimony from the Chief Investigator of the prosecutor's office, Skipper Polk, about the office's gang affiliation files, the circuit court denied the motion for access on the basis that it was exempt from the FOIA as part of an undisclosed investigation by a law enforcement agency into suspected criminal activity. Ark. Code Ann. § 25-19-105(b)(6) (Repl. 1992). The court declined to review the file at issue.

The issue raised by Johninson before this court has two prongs: 1) whether the circuit court erred in refusing to order disclosure of information pertaining to gang memberships of the five witnesses, and 2) whether the circuit court should have per-

formed an *in camera* review of the gang affiliation files before making its decision. We believe that the second prong of Johninson's argument has merit.

■■ Our Freedom of Information Act provides for the disclosure of public records which are defined as including writings and data compilations in any form. Ark. Code Ann. §§ 25-19-103(1), 25-19-105(a) (Repl. 1992); *see City of Fayetteville* v. *Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990). Our policy regarding the FOIA has been enunciated clearly in our case law — we will interpret it liberally to accomplish the purpose of promoting free access to public information. *Depoyster* v. *Cole*, 298 Ark. 203, 766 S.W.2d 606 (1989); *City of Fayetteville* v. *Rose*, 294 Ark. 468, 743 S.W.2d 817 (1988); *Arkansas Gazette Co.* v. *Southern State College*, 273 Ark. 248, 620 S.W.2d 258 (1981).

There are exemptions to the FOIA, one of which directly relates to this case:

> (b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
>
> . . . .
>
> (6) Undisclosed investigations by law enforcement agencies of suspected criminal activity.

Ark. Code Ann. § 25-19-105(b)(6) (Repl. 1992). Exemptions to the FOIA are to be construed narrowly. *Young* v. *Rice*, 308 Ark. 593, 826 S.W.2d 252 (1992); *Hengel* v. *City of Pine Bluff*, 307 Ark. 457, 821 S.W.2d 761 (1991); *Legislative Joint Auditing Comm.* v. *Woosley*, 291 Ark. 89, 722 S.W.2d 581 (1987).

■ One commentator on the FOIA in Arkansas has this to say about the criminal investigation exemption:

> The need for subsection (b)(6), the basic exemption, is obvious; for example, disclosure of such records would hamper the police in investigating a crime before formal charges had been filed and could be detrimental to persons under investigation but subsequently exonerated of all wrongdoing. Despite these and other compelling reasons for the exemption, its precise meaning is hardly clear.

*J. Watkins, Arkansas Freedom of Information Act*, p. 86 (2d ed. 1994). In discussing what constitutes an investigation, we cited authority in *Hengel* v. *City of Pine Bluff, supra*, to the effect that investigatory records are records dealing with the detection of crime. *See Caledonian Record Pub. Co.* v. *Walton*, 154 Vt. 15, 573 A.2d 296 (1990). We have also held that an undisclosed investigation includes those that are open and ongoing. *Martin* v. *Musteen*, 303 Ark. 656, 799 S.W.2d 540 (1990).

In the case at hand, the evidence of what information concerning gang affiliation was kept by the prosecutor came from Chief Investigator Polk. Polk testified that the prosecutor participates in a group with other law enforcement agencies, including the Arkansas State Police, called the Pulaski County Gang Enforcement Network. Information on gang activity is exchanged among members of the group and kept in a variety of forms including paper and computer data. That information was described in the following colloquy:

PROSECUTOR: Okay. The information that is contained down in this area of our office, would it be fair to classify it as raw intelligence?

POLK: Yes, sir, unsubstantiated in most occasions.

PROSECUTOR: Okay. Are there references to informants?

POLK: Yes.

PROSECUTOR: Are there conclusions stated by law enforcement officers; just, "I believe X"?

POLK: Yes, sir.

PROSECUTOR: Are you concerned or do you have any concerns with the disclosure of any of this information? And if so, would you please elaborate.

POLK: Yes, sir. Your Honor, if I may, the information that we have is part of an ongoing investigation that we, along with the other major law enforcement agencies, started six months ago on gangs in Pulaski County. Everyday there is some sort of intelligence information developed or followed up on in regards to this. It's an ongoing thing

that we will probably be doing from now on for at least in my foreseeable immediate future.

That information, a lot of it is unsubstantiated. I think some people would be put at risk if names were divulged. I think there may be some embarrassment publicly for some people that may — somebody may say that Joe Blow is a gang member and that's all that somebody may say with no back up or, in fact, there may be other evidence that indicates they are not gang members. So we don't know. We don't know what kind of information it is.

Polk added that there were no individual files on the potential witnesses named by Johninson, although on cross examination he testified that he "could probably" search the files for individual names.

At the conclusion of Polk's testimony, the circuit court stated that the gang investigation described by Polk "is as much a part of a law enforcement investigation as any criminal case out there." The court was then asked by Johninson's counsel to reconsider an *in camera* review of the files for information about the five witnesses. The court refused based on what it had heard from Investigator Polk.

█ We conclude that the circuit court must review the relevant files *in camera* in order to make its decision that this exemption applies across the board to those files. While Investigator Polk presented an overview of the Pulaski County Gang Enforcement Network and the investigative aspect of the files involved as well as the dangers that might result from disclosure, the scope of those files and what information comprised them was left somewhat vague and undefined. It was also less than clear whether the names of the five witnesses and their status could be pulled from the files, and if so, whether this would in any way impair or frustrate an ongoing investigation. It is incumbent on the court to determine whether the exemption applies, and this can be done only by reviewing the relevant information in question.

We do not intend to send a signal by this opinion that the circuit court should release any information to Johninson. That is a matter to be decided by the circuit court after its review. We

hold that in order to invoke a narrowly construed exemption under the FOIA, the circuit court must peruse the pertinent data in question in order to make an informed decision.

Remanded.

HAYS, J., would affirm.

CORBIN, J., not participating.