The Honorable Paul Miller State Senator P.O. Box 488 Melbourne, AR 72556-9511
Dear Senator Miller:
You have presented the following question for my opinion:
 When does the public have a right to obtain access to police incident reports? Under the Freedom of Information Act, does the public have the right to review the "field notes" that form the basis for incident reports, or does the public have to wait until an incident report is finalized?
You state that your question arises out the following-described procedure that is followed by the Cherokee Village Police Department: The department responds to an incident and takes notes that are called "field notes." The "field notes" are then placed in a basket for the chief of police to review. He reviews this information for inconsistencies and errors and asks the officer any follow-up questions. Someone then types up a final report, which is then made available to the public.
RESPONSE
It is my opinion, as explained more fully below, that under the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 et seq.), the public can obtain access to police incident reports and the field notes that form the basis for those reports if, as a factual matter, these records are not part of an ongoing "undisclosed investigation," within the meaning of the FOIA.
Your question is governed by the provisions of A.C.A. § 25-19-105(b)(6), which states:
 (b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
* * *
 (6) Undisclosed investigations by law enforcement agencies of suspected criminal activity[.]
A.C.A. § 25-19-105(b)(6).
The Arkansas Supreme Court has interpreted the phrase "undisclosed investigations," as used in the above-quoted section of the FOIA, to encompass investigations that are "ongoing," as opposed to "completed."See Johninson v. Stodola, 316 Ark. 423, 872 S.W. 2d 374 (1994). In addition, a record must be "investigative" in nature in order to qualify for the exemption. The question of whether an investigation is "ongoing," and the question of whether a particular record is sufficiently "investigative" in nature, are questions of fact that must be determined on a case-by-case basis. For this reason, it is not possible for me to opine as a general matter as to whether any particular record falls within this exemption. Nevertheless, in Hengel v. City of Pine Bluff,307 Ark. 457, 821 S.W.2d 761 (1991), the court provided a certain amount of guidance concerning the types of records about which you have inquired. A review of that case is therefore beneficial in analyzing your question.
In Hengel, a reporter requested certain arrest reports, incident reports, jail logs, and jail shift sheets that were in the possession of the city's police department. The city argued that these records should be exempt from disclosure under Section 105(b)(6), quoted above, as a part of an undisclosed investigation. The court held that these records were not exempt from disclosure because they were not sufficiently investigative in nature to qualify for the exemption. Although the court stated that the record from the lower court did not clearly indicate the contents of the requested records, it described the "apparent" information that was contained in the jail log, arrest records, and shift sheets. The jail log included the time a suspect was brought to the jail, the name of the arresting officer, the charge, and the time and date of booking. The arrest records contained pertinent personal information about the person arrested, such as the suspect's name, sex, race, and date of birth, what the person was charged with. The arrest records may or may not have stated facts surrounding the arrest. The shift sheets listed the people who were incarcerated, as well as the offense for which each person was arrested, the prisoner's sex, the names of the trustees who were available for work, and the names of the jailer and matron. The court held that this information was not sufficiently investigative in nature to fall within the exemption for undisclosed investigations and should therefore be disclosed to the public.
I note that the court's decision turned in large part upon the particular contents of the specific records under consideration and upon the officers' testimony in court concerning the use of the records. That is, the evidence presented to the lower court did not establish that the records were sufficiently investigative in nature to qualify for the exemption. The court also relied heavily on a Texas case that it found to be "particularly instructive": Houston Chronicle Publishing Co. v. Cityof Houston, 531 S.W.2d 177 (Tex.Civ.App. 1975). In that case, the Texas Court of Civil Appeals construed a similar exemption under Texas law for law enforcement records to include only such matters as "`officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests.'" Hengel, 307 Ark. At 461, quoting Houston Chronicle Publishing Co. v. City of Houston,531 S.W.2d at 187.
The Hengel decision provides authority for the proposition that incident reports are not sufficiently investigative to qualify for the "undisclosed investigation" exemption unless they contain information such as that described by the Texas court in Houston Chronicle. The question of whether the "field notes" and the incident reports about which you have inquired contain that type of information, and therefore qualify for the "undisclosed investigation" exemption, is a question of fact. It is for this reason that I cannot opine definitively in response to your question. If the requestor believes that the city is relying upon this exemption without foundation, the remedy is to challenge the claim in court. A.C.A. § 25-19-107; Johninson v. Stodola, 316 Ark. 423,872 S.W. 2d 374 (1994); Op. Att'y Gen. No. 2002-149.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General