The Honorable Johnny Key State Representative 1105 Delwood Lane Mountain Home, Arkansas 72653-5601
Dear Representative Key:
I am writing in response to your request for an opinion on three questions regarding the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, you pose the following three questions:
 1. If what could be described as a memorandum or working paper is prepared in violation of Arkansas Code 7-1-103(a)(2), can it properly be considered a working paper or memorandum for purposes of exemption to the state freedom of information act?
 2. Are there in the Arkansas Code, or can you provide, legal definitions of the terms "memoranda", "working papers" and "correspondence" so that the terms can be distinguished from each other?
 3. Does the working papers exemption to the FOIA exempt all documents and e-mails in the offices of the state officials listed in Arkansas Code 25-19-105
(b)(7)? If not, what documents and emails are not exempt?
RESPONSE
It is difficult to answer your first question because you have not delineated any particular facts upon which a definitive conclusion could be reached. The classification of a particular record would of course depend upon all the attendant facts. In my opinion a legal conclusion that a record is prepared in violation of A.C.A. § 7-1-103(a)(2), standing alone, does not control the question of whether a record is a "public record" under the FOIA or whether it falls within the exemption for unpublished memoranda, working papers or correspondence of certain officials under the A.C.A. § 25-19-105(b)(7) exemption. Section7-1-103(a)(2) enumerates certain misdemeanor election offenses under Arkansas law. It does not govern the public or nonpublic nature of records kept by government officials. That topic is addressed by the FOIA and any other related laws. The question in each case will turn upon whether the record in question meets the definition of a "public record" in the FOIA and whether it falls within the exemption found in 25-19-105(b)(7). Unfortunately, the law in Arkansas regarding the scope of the items covered by the25-19-105(b)(7) exemption (unpublished memoranda, working papers and correspondence of the named officials), is not well defined. In response to your second question, the applicable terms are not defined in the FOIA and this office has not been invested with power to provide controlling definitions of terms where the legislature or judicial branch has failed to do so. In response to your third question, in my opinion the answer is "no," the FOIA does not exempt all documents and e-mails in the offices of the officials listed in A.C.A. § 25-19-105(b)(7). My predecessors have concluded, and I agree, that not all such records would qualify for the exemption. My predecessors have mentioned employment-related records and certain fiscal records as examples of records that might not qualify for the exemption.
Question 1 — If what could be described as a memorandum orworking paper is prepared in violation of Arkansas Code7-1-103(a)(2), can it properly be considered a working paper ormemorandum for purposes of exemption to the state freedom ofinformation act?
You have not stated any particular facts in relation to your first question. Because you have referenced subsection (a)(2) of A.C.A. § 7-1-103, I assume that your question has reference to a record produced by a public servant in the course of either: 1) devoting time or labor during usual office hours toward the campaign of any other candidate for office, or 2) circulating an initiative or referendum petition in a government office, or during usual office hours, or while on public duty. I assume additionally, because your question conclusively presumes that a violation of A.C.A. § 7-1-103(a)(2) occurred, that you refer to a situation where there has been a conviction under A.C.A. §7-1-103(a)(2), or a plea of guilty, finding of guilt, or other legal adjudication that a violation occurred.
In this regard, A.C.A. § 7-1-103(a)(2) provides as follows:
 (a) The violation of any of the following shall be deemed misdemeanors punishable as provided in this section:
 * * * (2)(A) It shall be unlawful for any public servant, as defined in § 21-8-402, to devote any time or labor during usual office hours toward the campaign of any other candidate for office or for the nomination to any office; and
 (B) It shall be unlawful for any public servant, as defined in § 21-8-402, to circulate an initiative or referendum petition or to solicit signatures on an initiative or referendum petition in any public office of the state, county, or municipal governments of Arkansas or during the usual office hours or while on duty for any state agency or any county or municipal government in Arkansas. . . .
A.C.A. § 7-1-103(a)(2) (Supp. 2005).[1]
In either case, in my opinion, the fact that a record was created in violation of A.C.A. § 7-1-103(a)(2), standing alone, is not determinative of the question regarding the record's public status. A separate inquiry must be undertaken under the applicable provisions of the FOIA to determine that issue. Cf.Agee v. Central Intelligence Agency, 517 F.Supp. 1335 (D.D.C. 1981) (stating under the federal FOIA that "[w]hether or not in the totality of the circumstances it could be said that some kind of illegality may have occurred cannot be resolved by the Court in the exercise of its FOIA responsibilities, particularly where both the law and the facts are undetermined" and "the possibility that withheld documents might suggest some marginal activity by an agency does not automatically detract from a valid exemption").
To determine the public nature of such a document, reference must first be had to the definition of "public records." The FOIA defines "public records" as follows:
 (5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005) (emphasis added).
Records are "public records" for purposes of this definition if they are "required by law to be kept or [are] otherwise kept" and if they "constitute a record of the performance or lack of performance of official functions." Although all records maintained in public offices or by public employees within the scope of their employment are "presumed" to be public records, "the presumption is not always conclusive. To conclude otherwise would ignore the `performance' limitation in Section25-19-105(5)." Ops. Att'y. Gen. 2005-095, at 4. Accord Op. Att'y Gen. 2000-220. The presumption can therefore "be rebutted if the records do not otherwise fall within the definition found in the first sentence." Id.
Assuming a record is in fact a "public record" for purposes of the FOIA, it may be exempt from public inspection and copying under one of the many listed exemptions in the FOIA or by other controlling law. The exemption that is the focus of your question is the one found at A.C.A. § 25-19-105(b)(7) which exempts:
 Unpublished memoranda, working papers, and correspondence of the Governor, members of the General Assembly, Supreme Court Justices, Court of Appeals Judges, and the Attorney General.
A.C.A. § 25-19-105(b)(7) (Supp. 2005). Although your first question mentions only a "memorandum or working paper," I should note that the exemption in A.C.A. § 25-19-105(b)(7) also includes "correspondence" of the named officials.
Obviously, to determine whether a record created in violation of A.C.A. § 7-1-103(a)(2) is a "public record" under the FOIA, or whether it falls within the exemption for unpublished memoranda, working papers and correspondence of the listed officials, all the particular facts surrounding its creation and retention would have to be evaluated. Because you have not specified any particular facts in this regard, I cannot conclusively opine on this point.
As noted above, however, your question presumably focuses on either: 1) a record created or kept in the course of a public servant's devoting time or labor during usual office hours toward the campaign of any other candidate for office, or 2) circulating an initiative or referendum petition in a government office, during usual office hours, or while on public duty.
As an initial matter, it might be argued that records created in violation of the prohibitions found in A.C.A. § 7-1-103(a)(2) would not fall within the definition of "public records" under A.C.A. § 25-19-103(5)(A) to the extent they do not "reflect the performance or lack of performance of official functions." A record created or kept by a public servant during usual office hours that pertains to the campaign of another candidate for office, in violation of law, would, it seems, a fortiori, not reflect the performance of official functions. The same might be said for the circulation of an initiative petition under circumstances violative of 7-1-103(a)(2)(B). Whether such a record might reflect the "lack of performance" of official functions as contemplated by A.C.A. § 25-19-103(5)(A) may more nearly depend upon all the surrounding facts, perhaps including the scope and frequency of any violations. Again, I cannot determine the issue without regard to any relevant facts. A conclusion that a record such as you describe was not a "public record," however, would of course not preclude any separate access afforded officials with authority to investigate violations of A.C.A. § 7-1-103(a)(2).
If such a record did not meet the definition of a "public record" under these criteria, a determination as to whether the record would be eligible for the A.C.A. § 25-19-105(b)(7) exemption would be unnecessary. See e.g., International Unions, UnitedAutomobile, Aerospace and Agriculture Implement Workers ofAmerica v. Voinovich, 100 Ohio App. 3d 372; 654 N.E.2d 139
(1995) (because Governor's personal calendars and appointment books did not serve to "document the organization, functions, policies, decisions, procedures, operations or other activities of the office," under Ohio statutes, they were not "public records" and as a consequence it was not necessary to reach the question of whether they were exempted by "executive privilege"). If the record did, as a factual matter, meet the definition of a public record under A.C.A. § 25-19-103(5)(A), the inquiry would then become whether it was exempted by the exception for "unpublished memoranda, working papers and correspondence" of the official in question.
Unfortunately, the Arkansas Supreme Court has never squarely addressed the scope, nature, or definition of the three items listed in the (b)(7) exemption. The Arkansas cases discussing this exemption have mostly focused on which state agencies, entities or individuals are entitled to the exemption, rather than on the substantive scope of the three listed items. These cases were summarized in Op. Att'y. Gen. 1997-369 as follows:
 As noted by a recognized commentator on the FOIA, "[t]he scope of subsection (b)(7) has largely been defined by three Supreme Court decisions[.]" J. Watkins, The Arkansas Freedom of Information Act 100 (2nd ed. 1994). The three cases are: Legislative Joint Auditing Committee v. Woosley, 291 Ark. 89, 722 S.W.2d 581 (1987), Arkansas Hwy. Transp. Dep't v. Hope Brick Works, Inc., 294 Ark. 490, 744 S.W.2d 711 (1988), and Bryant v. Mars, supra. The decisions in Woosley and Hope Brick make it clear that the exemption under § 25-19-105(b)(7) for "working papers" reaches only records of the named state officials, and does not extend to other entities subject to the FOIA. Arkansas Freedom of Information Act, supra at 101. Bryant v. Mars
supports the proposition that the exemption also covers the staffs and private consultants of the named officials. Id. at 101-102.
Id. at 2.
Only one point regarding the substantive scope of the exemption has been previously addressed by the Arkansas Supreme Court or in Attorney General opinions. As I noted in Op. Att'y. Gen.2003-048:
 . . . [T]he exemption under subsection (b)(7) for "correspondence of the Governor" has been held to apply not only to documents created by the Governor, but also to records in his possession received from other parties. As stated in Attorney General Opinion No. 1992-346 with regard to the "correspondence" portion of the exemption:
 It thus appears that the exception for `correspondence of' the named officials includes both copies of letters that the officials have written to others, as well as letters received by the officials. [Bryant v. Mars, 309 Ark. 480, 830 S.W.2d 869
(1992)] indicates that any question in this area has been resolved in favor of applying the exemption to both copies of letters written by the Governor (and other named officials) and letters written to him. As a general matter, therefore, it is my opinion that the letters written to the Governor would be exempt from disclosure under the FOIA.
Id. at 2, also citing Op. Att'y. Gen. 1993-166 (stating that "[t]he exemption under 25-19-105(b)(7) for `correspondence of' the named officials may, in my opinion, reasonably be construed to encompass letters received by those officials and copies of letters written by them.")
Outside of this limited issue, the scope of the items listed in A.C.A. 25-19-105(b)(7) is undefined. Any construction of the exemption would of course begin with the principle that exemptions to the disclosure requirements of the FOIA must be narrowly construed. See, e.g., Orsini v. State, 340 Ark. 665,13 S.W.3d 167 (2000); Arkansas Dep't of Fin. Admin. v. PharmacyAssocs., 333 Ark. 451, 970 S.W.2d 217 (1998); Arkansas DOH v.Westark Christian Action, 322 Ark. 440, 910 S.W.2d 199 (1995);Troutt Bros. v. Emison, 311 Ark. 27, 841 S.W.2d 604 (1992);Hengel v. City of Pine Bluff, 307 Ark. 457, 821 S.W.2d 761
(1991). In addition, "the Arkansas Supreme Court has indicated that the policy of construing FOIA exemptions narrowly is a `general proposition' subject to a `balancing of interests' under `a common sense approach.'" Bryant v. Mars, 309 Ark. 480, 485,830 S.W.2d 869 (1992). Op. Att'y. Gen. 1995-277, at 2.
The crux of your question is whether a document created in violation of law, and thus presumably outside the scope of the duties of an official listed in A.C.A. § 25-19-105(b)(7), can nonetheless constitute a memorandum, working paper or correspondence of that official for purposes of the exemption. It may be argued that the (b)(7) exemption contains an implicit requirement that records relate to official functions, when viewed in light of the apparent legislative intention and when the exemption is construed narrowly. It has been stated that the "working papers" exemption "promotes and encourages free exchange of thought in each of the three branches of government[,]" (McCambridge v. City of Little Rock, 298 Ark. 219, 228,766 S.W.2d 909 (1989)). See also, Op. Att'y. Gen. 2002-250, at 2. This rationale would not appear to be furthered by restricting access to documents created in violation of statutory provisions. In addition, although there is sparse case law anywhere on the topic, it has been held, at least with respect to the analogous common law privilege protecting the "deliberative processes of government" (see generally Op. Att'y. Gen. 2002-250), that records created or maintained outside the official duties of the office-holder do not qualify for that exemption.[2] Seee.g., Herald Association, Inc., Times Argus Association Inc. andDaCapo Publishing, Inc. v. Dean, 174 Vt. 350, 816 A.2d 469, (2002) (information in Governor's daily schedule showing meetings or events unrelated to executive policy making or deliberations, including meetings and events related to his consideration of a potential bid for President of the United States, was not sufficiently related to gubernatorial policymaking or deliberations to qualify for confidential treatment under common law executive privilege). It has been stated, however, that "[t]he Arkansas Supreme Court is not among those state courts that have recognized a common law privilege protecting the `deliberative processes' of government." Op. Att'y. Gen.2002-250, at 2. Case law from sister states interpreting the scope of that privilege is therefore not entirely helpful in construing the Arkansas statutory exemption for "unpublished memoranda, working papers, and correspondence" of the named officials.
Conversely, it might be stated that the plain language of the exemption does not restrict the words "memoranda, working papers and correspondence," and therefore does not contain any express qualification as to the official or deliberative content of such documents. Cf. e.g., Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (4th ed. mm Press 2004, at 132) (stating that "the exemption includes correspondence as well as memoranda and working papers, thereby reaching material that might not be part of the decision-making process at all"). Cf. also, RichmondNewspapers, Inc. et al. v. Casteen, 42 Va. Cir. 505, 1997 WL 1070655 (Va.Cir.Ct.) ("concluding without deciding," that materials at issue therein were not "working papers," that there could be little doubt that the materials were "correspondence," a word with a common meaning, which did not require resort to rules of statutory construction). It might therefore be argued that the exemption must be read on its face to exempt the listed categories of records without regard to their content or connection to official duties.
It is difficult to reach any definite conclusions in response to your first question because of the lack of any particular facts attendant to your question and the dearth of relevant Arkansas case law in the area. In any event, the question of a record's public or nonpublic status is governed by the FOIA and any other pertinent statutes addressing access to, or confidentiality of, government records. Section 7-1-103(a)(2) of the Arkansas Code is not such a law. This is not to say, however, that the same circumstances and attendant facts which give rise to a violation of A.C.A. § 7-1-103(a)(2) will not also be relevant in determining whether a record meets the legal definition of a "public record" or falls within the meaning of the A.C.A. §25-19-105(b)(7) exemption, but the latter inquires are made with reference to FOIA law and are not controlled by A.C.A. § 7-1-103.
Question 2 — Are there in the Arkansas Code, or can you provide,legal definitions of the terms "memoranda", "working papers" and"correspondence" so that the terms can be distinguished from eachother?
The Arkansas Code does not define the terms "unpublished memoranda, working papers and correspondence." I cannot supply definitions for these terms in the absence of legislative or judicial definitions. As I recently stated in Op. Att'y. Gen.2005-284: "I and my predecessors have previously noted the Attorney General's lack of authority to supply a definition of a term that the legislature has not defined. Ops. Att'y. Gen.2005-020; and 2000-338, at 2, quoting Op. Att'y. Gen. 1998-025
("This office has consistently taken the position that in the absence of a legislatively- or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition.") In addition, the only case law or interpretive opinions addressing the scope of these terms is referred to above in response to Question 1.
The courts and justices of one state with a similar exemption have looked to definitions in Black's Law Dictionary or in Webster's Dictionary to help in defining the terms. See e.g.,Richmond Newspapers, Inc. et al. v. Casteen, 42 Va. Cir. 505, 1997 WL 1070655 (Va.Cir.Ct.) (word "correspondence" as used in Virginia exemption to open records law "is defined as the [i]nterchange of written communications. The letters written by a person and the answers written by the one to whom they are addressed," citing Black's Law Dictionary (6th ed. 1990) at 344, and as "communications by exchange of letters; letter writing," citing Webster's New Twentieth Century Dictionary,
unabridged (2ed. 1983)). See also, Taylor Jr. v. WorrellEnterprises, Inc., d/b/a The Daily Progress, 242 Va. 219,409 S.E.2d 136, 143 (1991) Hassell, J., dissenting (noting the definition of "memorandum" as being "[a]n informal record, note or instrument embodying something that the parties desire to fix in memory by the aid of written evidence, or that is to serve as the basis of a future formal contract or deed. A brief written statement outlining the terms of an agreement or transaction. Informal interoffice communication," citing Black's LawDictionary 984 (6th ed. 1990)).
The Arkansas Supreme Court has not had an opportunity to address the question, however, and the decisions mentioned above are of course not controlling in Arkansas. The issue must therefore be left to judicial or legislative clarification.
Question 3 — Does the working papers exemption to the FOIAexempt all documents and e-mails in the offices of the stateofficials listed in Arkansas Code 25-19-105 (b)(7)? If not, whatdocuments and emails are not exempt?
In my opinion the answer to this question is "no:" the §25-19-105(b)(7) exemption does not exempt all documents and e-mails in the offices of the listed officials. My predecessors have addressed this issue in several opinions. In Op. Att'y. Gen.2002-228, my immediate predecessor quoted previous opinions to the effect that:
 There is no support in the law for the proposition that the mere possession of a record by the governor's office transforms that record into the governor's "working paper." See Op. Att'y Gen. No. 1997-369. . . . I cannot state as a matter of law generally that all documents in the governor's possession are exempt from disclosure under the "working papers" exemption — particularly when many such documents would be disclosable under the more specific provisions of the FOIA, such as the personnel records provisions.
Op. Att'y. Gen. 2002-228, at 2, quoting Op. Att'y. Gen.1998-234 and relying on Op. Att'y. 1997-369.
My predecessor also stated that:
 I concur in the view of my predecessor that not every document possessed by the Governor's office is properly classified as "unpublished memoranda, working papers [or] correspondence of the Governor. . . ." There may be any number of documents in the Governor's possession that may not be properly categorized into one of these three enumerated classes of records. An example would be the personnel records discussed in Opinion 1998-234, quoted above. Another example might be certain types of fiscal records held by most state agencies, including the Governor's office.
Op. Att'y. Gen. 2002-228, at 2.
I have previously concurred with these views. See Op. Att'y Gen. 2003-048 (". . . I concur with my predecessors that the exemption under § 25-19-105(b)(7) does not encompass every document possessed by the Governor's office (see Op. Att'y Gen. Nos. 2002-228 and 1998-234)). . . ."
In my opinion, therefore, the answer to your third question is "no," not all documents and e-mails in the offices of the state officials listed in A.C.A. § 25-19-105(b)(7) are exempt under that provision. The question of what documents and e-mails would not be covered by the exemption would of course have to be developed on a case-by-case basis, with reference to all the attendant facts. Previously mentioned examples include certain employment-related records, the release of which are covered by separate provisions of the FOIA (A.C.A. § 25-19-105(b)(12) and (c)(1)) and "certain types of fiscal records held by most state agencies. . . ." Op. Att'y. Gen. 2002-228 at 2.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Your question does not inquire about subsection (a)(3) of A.C.A. § 7-1-103, which currently prohibits any public servant from using any office or room furnished at public expense "to distribute any letters, circulars, or other campaign materials unless such office or room is regularly used by members of the public for such purposes without regard to political affiliation," and which prohibits the "use for campaign purposes [of] any item of personal property provided with public funds." Prior to its amendment by Act 553 of 1999, this subsection also prohibited the "use [of] any office or room furnished at public expense as [a candidate's] political headquarters." See Acts 1999, No. 553, § 1.
[2] This so-called "deliberative process privilege" is a common law evidentiary privilege that covers documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Op. Att'y. Gen. 2002-250, citing NLRB v. Sears,Roebuck Co., 421 U.S. 132, 150 (1975). As noted in Op. Att'y. Gen. 2002-250, "[t]he federal FOIA incorporates this privilege.See 5 U.S.C. § 552(b)(5) and Sears, supra."