
# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
**No.** CV-17-159

| | |
|---|---|
| DOC HOLLADAY AND LESA WARNER | Opinion Delivered November 8, 2017 |
| APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-15-6436] |
| V. | |
| BESSIE GLASS | HONORABLE WENDELL GRIFFEN, JUDGE |
| APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Sheriff Doc Holladay and Sergeant Lesa Warner (collectively Holladay) appeal the Pulaski County Circuit Court's order that (1) found that a prison transport manifest did not fall within the scope of the "undisclosed investigation" exception to the Arkansas Freedom of Information Act (FOIA) and (2) awarded attorney's fees and costs to Bessie Glass. We find no error and affirm.

On 7 December 2015, Johnnie Lee Phillips attempted to escape while being transported with other inmates and pretrial detainees from the Pulaski County Courthouse to the Pulaski County Regional Detention Facility. On December 10, Glass, who is Phillips's aunt, requested a copy of the "trip sheet," or transportation manifest, which is a list of the passengers who were on the transport vehicle when the escape attempt occurred. Six days later, on December 16, Glass was denied a copy of the manifest; Sergeant Lesa Warner explained via email that it was exempt pursuant to Ark. Code Ann. § 25-19-

SLIP OPINION

105(b)(6) (Repl. 2014) (exemption that excludes "undisclosed investigations by law enforcement agencies of suspected criminal activities" from the FOIA).

On 29 December 2015, Glass filed a complaint against Pulaski County, Pulaski County Sheriff Doc Holladay, and Lesa Warner.[1] Glass alleged a violation of the FOIA and requested that Holladay be ordered to provide the manifest. She also requested attorney's fees and other litigation expenses. Holladay responded with a motion to dismiss, arguing that the complaint failed to state facts upon which relief could be granted. Holladay also asserted that the manifest had been provided to Glass on 4 January 2016, so the issue was now moot.

In an order filed on 22 April 2016, the circuit court denied Holladay's motion to dismiss. First, the circuit court found that the case fell within an exception to the mootness doctrine because it presented an issue capable of repetition yet evading review. The court also found that the manifest was not subject to the "undisclosed investigations" exception, citing *Hengel v. Pine Bluff*, 307 Ark. 457, 821 S.W.2d 761 (1991). In *Hengel*, our supreme court held that jail logs, arrest records, and shift sheets were not sufficiently investigatory in nature to fit within the exception to public disclosure. The opinion indicated that subsection (b)(6) is meant to exempt only "internal 'work product' materials containing details of an investigation." 307 Ark. at 461, 821 S.W.2d at 763 (quoting J. Watkins, *The Arkansas Freedom of Information Act* 72 (1988)).

In the present case, the circuit court found that the manifest was "simply a log, a list of names, dates, locations, and times. The nature of the manifest is clearly non-investigative;

---

[1]Pulaski County was later dismissed from the case and is not a party to this appeal.

it is not internal work product material, and does not contain details of any investigation." Holladay filed a motion for reconsideration, objecting to the court effectively entering a judgment on the pleadings and requesting the opportunity to file an answer to the complaint and present witnesses at a hearing. Glass petitioned for attorney's fees and costs in the amount of $12,151.50. The circuit court entered an order denying that its previous order had been a judgment on the pleadings. The court denied the motion for reconsideration and directed that a final hearing be set to address the merits of the case and appropriate attorney's fees, if any.

Holladay filed an answer to the complaint on 7 July 2016. Glass moved to strike the answer, arguing that it was filed too late after the denial of the motion to dismiss. Holladay responded and denied that the answer was untimely; Holladay also moved for summary judgment based on essentially the same arguments made in the motion to dismiss.

The circuit court convened a hearing on 21 October 2016. At the onset, the court announced that it was denying the motion to strike and the motion for summary judgment. The court reiterated its earlier finding that the manifest was not subject to the "undisclosed investigations" exception and that *Hengel* was controlling. Holladay acknowledged that on "most routine days" the manifest would be subject to disclosure under the FOIA but argued that in this case "the trip sheet contains an exclusive list of all individuals who are witnesses to the escape and/or suspects in the assistance of the escape." Holladay asserted that the list was being used in an investigation of possible accomplices and was therefore investigatory in nature. The court disagreed and stated, "[I]f *Hengel* is to have any weight at all, it has to

SLIP OPINION

be controlling on the issue of whether or not a jail log, arrest record[,] and shift sheet are investigatory in nature."

The court concluded,

[T]he question for this case is whether or not the trip sheet was an undisclosed investigation. Plainly, it was a public record. . . . [T]here was an investigation and you could put the trip sheet in the investigation, but putting the trip sheet in the investigation does not transform the nature of the trip sheet.

. . . .

There happened to be an escape. The fact that there was an escape does not define the nature of the information of who was on the vehicle and that's all the trip sheet is. It's just a manifest.

And, after hearing arguments from counsel on the issue of attorney's fees, the court found that Holladay's failure to disclose the manifest was not substantially justified. The court's written order found that the manifest did not fall within the "undisclosed investigations" exception and awarded attorney's fees and costs in the amount of $8,726.50. This appeal followed.

### I.   *"Undisclosed Investigation" Exception to the FOIA*

The issue of the applicability of the FOIA is a question of statutory interpretation. We review issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *See Bedell v. Williams*, 2012 Ark. 75, 386 S.W.3d 493. This court liberally interprets the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *See Fox v. Perroni*, 358 Ark. 251, 188 S.W.3d 881 (2004). Furthermore, we broadly construe the FOIA in favor of disclosure. *See id.* Arkansas Code Annotated section 25-19-105(a)(1)(A) (Repl. 2014) provides:

(a)(1)(A) Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.
. . . .

(b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
. . . .

(6) Undisclosed investigations by law enforcement agencies of suspected criminal activity.

On appeal, after a lengthy overview of Arkansas Supreme Court jurisprudence on the applicability of subsection (b)(6), Holladay argues that the circuit court erred in finding that *Hengel* controls and in "failing to read *Hengel* in the context of the later case of *Johninson v. Stodola* [316 Ark. 423, 872 S.W.2d 374 (1994)]." In that case, Johninson was charged with first-degree murder, and his attorney made a FOIA request for access to the prosecutor's files on gang membership. Without reviewing the files in camera as requested by counsel, the circuit court denied the request on the basis that the files were exempt under subsection (b)(6). On appeal, our supreme court noted that "investigatory records" are those dealing with the detection of crime and that an "undisclosed investigation" includes those that are open and ongoing. 316 Ark. at 426, 872 S.W.2d at 375. However, the supreme court concluded that the circuit court must review the relevant files in camera to determine whether the exemption applies, so it remanded the case without deciding the applicability of subsection (b)(6).

According to Holladay, *Johninson* stands for the proposition that "it is incumbent upon the trial court to review the relevant information for whether the release of that information would in any way impair or frustrate an ongoing investigation." And, in this

5

Cite as 2017 Ark. App. 595

case, the manifest was "crucial to an ongoing investigation of Johnnie Phillips's escape," so the "undisclosed investigations" exemption applied.

We hold that *Hengel* is controlling and that the manifest at issue in this case was simply a record kept in the regular course of business and was not investigatory in nature such that the exemption would apply. Contrary to Holladay's argument, we see nothing in *Johninson* that would change that analysis. We therefore affirm the circuit court's ruling.

## II. *Attorney's Fees*

Attorney's fees are not allowed except where expressly provided for by statute. *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006). Arkansas Code Annotated section 25-19-207(d)(1) provides that

> [i]n any action to enforce the rights granted by this chapter, or in any appeal therefrom, the court shall assess against the defendant reasonable attorney's fees and other litigation expenses reasonably incurred by a plaintiff who has substantially prevailed unless the court finds that the position of the defendant was substantially justified.

Ark. Code Ann. § 25-19-207(d)(1). An award of attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *Harris, supra.* The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004).

Under the plain language of the statute, attorney's fees shall be assessed against the defendant (1) when the plaintiff substantially prevailed in his suit to enforce a right granted under the FOIA *unless* (2) the position of the defendant was substantially justified. Holladay asserts that Glass did not substantially prevail because the circuit court must be reversed on

Point I above. Holladay also argues that they were substantially justified in denying Glass's FOIA request because they justifiably relied on several Arkansas Attorney General opinions that found certain personnel records to be exempt under subsection (b)(6) because they were part of an ongoing investigation. Holladay opines that those opinions provided a "reasonable basis" for the denial.

The circuit court rejected this argument below and made the following remarks:

> We're talking about a trip manifest. The question is whether or not this trip manifest was a public record. If the trip manifest was a public record but—if the question is whether a trip manifest is a public record, the answer easily is (A) it was.

> If the question is whether or not the trip manifest was an investigatory document, was an ongoing investigation, the answer is it wasn't.

> Not a hard question. The fact that Sergeant Warner or others within the sheriff's department thought it was doesn't mean they were justified in doing so.

> There's no case authority that says they were justified in doing so. There is no decision that the Arkansas Supreme Court says they're justified in doing so.

> As a matter of fact, the *Hengel* holding stands in stark contradiction of their position. There's nothing before me that indicates that Sergeant Warner was advised by counsel that her position was justified.

We hold that there was no abuse of discretion on the part of the circuit court. First, because we affirm on Point I above, there can be no argument that Glass did not substantially prevail. Second, the fact that Warner believed that the manifest was investigatory and therefore exempt does not mean that she was justified in so believing. Thus, we affirm the circuit court's award of attorney's fees.

Affirmed.

VIRDEN, KLAPPENBACH, GLOVER, and MURPHY, JJ., agree.

GLADWIN, J., dissents.

**ROBERT J. GLADWIN, Judge, dissenting.** Can a record which is normally open to inspection under the Arkansas Freedom of Information Act (FOIA) subsequently become exempt? Under the unique circumstances of this case, I believe the answer to that question is yes. Therefore, I respectfully dissent.

On December 7, 2015, the Pulaski County Sheriff's Office transported several inmates from the courthouse to the regional detention facility. One of the inmates, Johnnie Lee Phillips III, attempted an escape from the van. On December 10, 2015, Bessie Glass through Morris Thompson requested the "trip sheets." Appellants denied the request, claiming the records were exempt under the "undisclosed investigations" exception to the FOIA. *See* Ark. Code Ann. § 25-19-105(b)(6) (Repl. 2014). Several motions were filed which are insignificant to the question at hand. However, the trial court ultimately ruled that appellants had violated the FOIA and awarded $8,362.50 in attorney's fees and $364 in costs.

In a FOIA case, our standard of review is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). The issue of the applicability of the FOIA is a question of statutory interpretation, which we review de novo because it is for this court to determine the meaning of the statute. *Hollis v Fay. Sch. Dist. No. 1 of Washington Cty.*, 2016 Ark. App. 132, 485 S.W.3d 280.

Arkansas Code Annotated section 25-19-105(b)(6) provides that records concerning undisclosed investigations by law enforcement agencies of suspected criminal activity shall not be deemed to be open to the public. I agree that under normal circumstances the "trip sheets" are open records. I also acknowledge that if the request had been made prior to the attempted escape, the records would be open. However, the unique circumstances of this case require reversal.

It is undisputed that had a detective taken the names of the passengers after the incident, that information would be exempt from inspection under the FOIA. We know that criminal-investigations records that are exempt can become open after the case is concluded. I find no law that prohibits potentially open records to become exempt because a criminal case is opened. Again, it is undisputed that the information on the "trip sheets" was crucial to this investigation and was therefore investigatory.

The majority relies on *Hengel v. City of Pine Bluff*, 307 Ark. 457, 821 S.W.2d 761 (1991), to find the "trip sheets" open to the public. I think *Hengel* can be distinguished. In *Hengel,* the newspaper reporter was asking for the jail log of people already arrested and in jail. While it can be argued that the "trip sheets" contained similar information, once the escape occurred, that list contained the names of potential witnesses, informants, or codefendants to a specific crime. Further, the public has a right to know who the government has incarcerated. However, the public does not have the same right to know the names of potential witnesses, codefendants, and informants in an ongoing criminal investigation.

9

In *Hengel,* our court found *Houston Chronicle Publishing Co. v. City of Houston*, 531 S.W.2d 177 (Tex. Civ. App. 1975), "particularly instructive." The *Hengel* court observed that the Texas Court of Civil Appeals construed the exception to include "only such matters as 'officers' speculations of a suspect's guilt, officers' views as to credibility of witnesses, statements by informants, ballistic reports, fingerprint comparisons, or blood and other laboratory tests.'" *Hengel* at 462, 821 S.W.2d at 764 (citing *Houston Chronicle*, *supra*, 531 S.W.2d at 187). The court reasoned that providing access to such records might reveal the names of informants, creating the threat of intimidation of potential prosecution witnesses and endangering the State's position in criminal prosecutions by the use of such materials to the disadvantage of the prosecution. I would suggest that the inmates in the transport might not have known each other, and limiting access to that information protected critical information about the investigation. The potential for intimidation within the lock up clearly exists. Simply stated, I believe a list of riders can be converted to a list of witnesses and suspects. The release of this information would impair or frustrate this ongoing investigation. *See Johninson v. Stodola*, 316 Ark. 423, 872 S.W.2d 374 (1994).

Arkansas Code Annotated section 25-16-107(d) provides for attorney's fees unless the court finds the defendant's position was substantially justified in withholding the requested information. The appellants were substantially justified in the position they took. Therefore, I would also reverse the award of attorney's fees.

*Monty V. Baugh, PLC*, by: *Monty Vaughan Baugh*, for appellants.

*Morris W. Thompson Law Firm, P.A.*, by: *Morris W. Thompson*, for appellee.