John Lee MARTIN, Jr. *v.* Dennis MUSTEEN,
City of Rogers, and David S. Clinger

90-126                                          799 S.W.2d 540

Supreme Court of Arkansas
Opinion delivered November 19, 1990

*Norwood & Smith, P.A.*, by: *Doug Norwood*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

DAVID NEWBERN, Justice. This is an appeal from denial of information sought pursuant to the Arkansas Freedom of Information Act (FOIA). Ark. Code Ann. §§ 25-19-101 through 25-

19-107 (1987 and Supp. 1989). William Leon Pinson was charged with manufacture and delivery of a controlled substance as well as possession of drug paraphernalia. His lawyer, John Lee Martin, Jr., the appellant, sought from appellee Dennis Musteen, who is the Chief of Police of Rogers, Arkansas, the police investigation file with respect to the charges against Pinson. Chief Musteen consulted with appellee David S. Clinger, the prosecutor of the 19th Judicial District, who advised that the file need not be released to Martin. Mr. Martin then brought this action pursuant to the act. Mr. Clinger intervened on the side of Chief Musteen and the City of Rogers. The circuit court ruled that the information need not be released until Pinson was tried or a decision had been made not to try him. The result reached was correct, and we affirm.

We have no doubt that the information sought constituted "public records" as defined in § 25-19-103(1). According to § 25-19-105(a), all public records are open to public inspection by any Arkansas citizen during regular business hours of the custodian of the records. Section 25-19-105(b), however, lists the exemptions, one of which, found in § 25-19-105(b)(6), is "[u]ndisclosed investigations by law enforcement agencies of suspected criminal activity."

The circuit court held a hearing at which Chief Musteen testified and referred to the investigation as an "ongoing" one. He said he would be guided in any felony investigation case by the advice of Mr. Clinger. Mr. Clinger testified that Pinson's case was part of a larger investigation involving a great deal of information about other persons allegedly involved with Pinson in trafficking in drugs and that the investigations of those persons would continue for some time before the police stop the active investigation.

For his contention that the police file in this case does not fall within that exemption, Martin cites two of our recent cases. The first is *City of Fayetteville v. Rose*, 294 Ark. 468, 743 S.W.2d 817 (1988), in which we held that information contained in investigations conducted by the City of Fayetteville police and fire departments were not undisclosed and thus not exempt from release. The police and fire departments had finished their investigations. The Federal Bureau of Alcohol, Tobacco, and

Firearms had also investigated, and Rose had been indicted by a federal grand jury. We wrote:

> There was no "undisclosed investigation." Everyone knew about it. The Fire and Police Departments of Fayetteville had finished their investigation. The [BATF] had investigated the matter, turned its report over to the U.S. attorney's office, and a federal grand jury had returned an indictment. No reading of the Freedom of Information Act consistent with our decisions could support a finding that there was an "undisclosed investigation" involved. Therefore, the records held by the fire and police departments are subject to disclosure under the Freedom of Information Act.

Discussing the *City of Fayetteville* case, Professor John J. Watkins noted that, if taken literally, the language quoted would be a proper basis for the fears of the justices who dissented in the case that law enforcement efforts would be severely hampered if the file of any police investigation could be obtained pursuant to the FOIA just on the basis of public awareness. He alludes to an alternative interpretation of the quoted language to the effect that any completed investigation is subject to disclosure. Professor Watkins points out that neither public awareness nor the alternative interpretation should be the criterion applied to determine whether an investigation has been "disclosed," but the test should be based on a criterion more in line with the purposes of the FOIA.

> This approach would require a case-by-case evaluation of the effect of disclosure in light of the purposes of the law enforcement exemption. For example, if the only danger apparent from release of certain records is interference with an investigation or contemplated enforcement proceedings, the exemption is inapplicable if the investigation has been completed and no further proceedings are contemplated. As one court has observed, there is in such circumstances "no reason to protect yellowing documents contained in long-closed files." On the other hand, if release of records in a "closed" case would reveal the identity of a confidential informant, an undercover police officer or even the name of a citizen interviewed during an

investigation, the exemption should apply and the material should be withheld. Of course, if the name of the individual can be deleted from the records, the remainder of the material is subject to disclosure until another reason for secrecy is present. [J. Watkins, The Arkansas Freedom of Information Act, 70-71 (m & m Press, 1988).]

The other case cited by Mr. Martin is *McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989). There we held that photographs of a crime scene and a pathologist's photograph made in connection with a police investigation were to be released in accordance with the act, citing the *City of Fayetteville* case. We also held that the police file in the *McCambridge* case was subject to release under the act despite the fact that it allegedly contained statements from confidential informants. We noted the argument made in that case by the Little Rock Police Department to the effect that requiring the release of the file would detract from effective law enforcement and thus be detrimental to the public interest. We referred that argument to the general assembly.

The court's opinion in the *McCambridge* case closed, however, with this language:

> The only purpose of the exemption, as written, is to prevent interference with ongoing investigations. When a case is closed by administrative action, as this one was, the reason for the exemption no longer exists, and the trial court correctly ordered the statements released. Accordingly, we affirm the ruling of the trial court that the police reports are to be released.

The *City of Fayetteville* and *McCambridge* cases have in common the fact that the investigation files sought to be released had to do with completed police investigations. In the language quoted above from our opinion in the *McCambridge* case, we recognized that the statutory exemption of "undisclosed investigations" had as its purpose the protection of "ongoing investigations" like the one in this case.

While the investigation in this case was disclosed to the extent that it was public knowledge that Pinson was charged with a crime at the time the request for information was made, there

was evidence that it was undisclosed as to other possible defendants. It was, in any event, an "ongoing" investigation which we recognized in the *McCambridge* case as the type to be protected. While we recognize that the definition of "ongoing" is not the same as the definition of "undisclosed," we conclude, as we recognized in the *McCambridge* case and as Professor Watkins suggested after our decision in the *City of Fayetteville* case, that the general assembly meant to protect ongoing criminal investigations being conducted by law enforcement agencies.

We appreciate Mr. Martin's argument that, by including in ongoing investigations references to closed investigations, the authorities could try to frustrate attempts to obtain information from investigations which are closed and thus not ongoing. Our only answer must be that the trial court will have to decide, as a matter of fact in any such case, whether investigations are ongoing or not. In the *McCambridge* case, we obviously did not go as far as Professor Watkins would have had us go in the direction of saying that, for example, the names of confidential informants must be protected from disclosure under the act. Nor do we go so far as the trial court in this case to say that a criminal investigation is not entitled to come within the law enforcement exemption until the subject of the investigation is tried or a decision not to try him or her has been made.

Our holding here is that if a law enforcement investigation remains open and ongoing it is one meant to be protected as "undisclosed" under the act. We recognize that the investigation in this case could be said to be closed and thus not ongoing to the extent that it was an investigation of Pinson who has been charged, but our judgment is that it was the sort of investigation intended by the general assembly to deserve the label "undisclosed," because of its continuing and sensitive nature, and thus the trial court reached the correct result.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. If the majority court's decision today does not overturn its earlier holding in *City of Fayetteville v. Rose*, 294 Ark. 468, 743 S.W.2d 817 (1988), it certainly has rendered the *Rose* holding, and the principle upon

which it was based, entirely meaningless. As the majority points out, this court in *Rose* held that certain investigative records possessed by the Fayetteville Police Department were subject to disclosure under the FOIA because the records did not involve an "undisclosed investigation" which would render them exempt. We further said in *Rose* that the records did not involve an undisclosed investigation because the state and federal authorities had completed their investigation, a federal grand jury had indicted Rose for manufacturing and possessing unregistered explosive devices, and everyone knew of the law enforcement authorities' investigation and indictment of Rose.

There is little to distinguish the present case from *Rose*. The Rogers Police Department investigated a controlled substance crime that Mr. William Pinson purportedly committed on July 11, 1988, and on June 5, 1988, Pinson was arrested and later arraigned on September 5, 1988. Pinson's attorney, John Martin, made his FOIA request of the Rogers Police Department on September 25, 1989 — after everyone knew of the authorities' investigation of and formal charge against Pinson.

The only difference between this case and *Rose* is that here the prosecutor claims the police department's file on Pinson also contains information pertaining to other individuals, who were allegedly involved with Pinson in his drug violation. The prosecutor says his investigation of these other individuals is continuing.

The majority opinion recognizes that the investigation file the Rogers police have on Pinson would have been closed and therefore open for inspection for FOIA purposes, except that the file also contains information on other persons who were supposedly involved with Pinson. Because of these references to other individuals, this court categorized this otherwise closed investigation as an "ongoing" one, which is exempt from inspection under our interpretation of the FOIA. *See McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989). Of course, when the court adopts this view, it might as well hold (contrary to *Rose*) that all investigative records of defendants charged with crimes are exempt from FOIA inspection until those defendants are tried, convicted or acquitted. Since most any investigative file on a defendant charged with a crime will contain references to other individuals, the state need only assert that those persons

remain under investigation thereby closing the defendant's file from inspection until (or even after) his trial.

If the *Rose* decision is to retain any semblance of meaning and viability, surely an investigative file of a formally charged and arraigned defendant should be subject to inspection after the file is sanitized of those objectionable materials concerning other legitimate, potential defendants. At the very least, I would reverse and remand this case directing the trial court to remove or excise those references to such individuals and allow the appellant to inspect the remaining materials which were determined by this court in *Rose* to be subject to inspection under the FOIA.