Mr. Scott Henderson, Director Arkansas Game and Fish Commission 2 Natural Resources Drive Little Rock, Arkansas 72205
Dear Mr. Henderson:
I am writing in response to your request for an opinion concerning the release of records under the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, you have made two separate requests for opinions, one pertaining to an FOIA request by a media outlet for "any Game and Fish documents concerning an altercation involving former U.S. Marshal Ray Carnahan and an employee of the state Game and Fish Commission" and the other by another media outlet for "an incident report and/or any other document(s) pertaining to an encounter on April 28 or earlier this year between Ray Carnahan, then U.S. marshal for the Eastern District of Arkansas, and any employee or agent of your office." In each request for an opinion, you state that the request at issue is "seeking information that is a part of open and ongoing federal and state criminal investigations concerning conduct by Mr. Carnahan." You reference the exemption in the FOIA for "[u]ndisclosed investigations by law enforcement agencies of suspected criminal activity" and state that it is your intention to deny this request pending confirmation by [my] office that the exemption . . . is applicable." You have also enclosed with each request for an opinion "a copy of an Incident Report concerning the pending investigations." Because the issues presented by your two opinion requests are so similar, I am combining them for resolution in this one opinion.
RESPONSE
I must note, as an initial matter, that the FOIA does not invest me with any authority to review your decision in this instance. My authority to issue opinions to the custodian, subject, or requestor of records under the FOIA pertains only to "personnel or evaluation" records. See A.C.A. § 25-19-105(c)(3)(B) (Supp. 2005). That provision requires me to state whether the custodian's decision with regard to the release of personnel or evaluation records is consistent with the FOIA. A.C.A. §25-19-105(c)(3)(B)(i). In the event of my review, the custodian "shall not disclose the records until the Attorney General has issued his . . . opinion." A.C.A. § 25-19-105(c)(3)(B)(ii). This procedure is not applicable here. The records at issue are not "personnel or evaluation records." As a consequence, your responsibility to respond to the requestors may not be delayed or "tolled" by review of this office. Your request for an opinion, rather, falls under my general authority to issue advisory opinions on matters of law. See A.C.A. § 25-16-706 (Repl. 2002).
To the extent you seek my opinion on the applicable law, I can state my opinion in that regard under A.C.A. § 25-16-706. Although the issue is not entirely clear, in my opinion the Arkansas Game and Fish Commission is a "law enforcement agenc[y]" for purposes of the law enforcement exemption found at A.C.A. §25-19-105(b)(6) (Supp. 2005). That exemption has been construed to shield documents of "ongoing" investigations by such agencies from inspection and copying under the FOIA. See Martin v.Musteen, 303 Ark. 656, 799 S.W.2d 540 (1990). You have stated that the matter in question is part of an open and ongoing investigation at the federal and state level. Nonetheless, the Arkansas Supreme Court has made clear that not all documents connected with law enforcement are "sufficiently investigative" in nature to qualify for exemption under A.C.A. §25-19-105(b)(6). Hengel v. City of Pine Bluff, 307 Ark. 457,821 S.W.2d 761 (1991). This principle is relevant in determining the public status of the incident report you have enclosed with your requests. Relying on Hengel, my predecessor has stated, and I agree, that incident reports are not sufficiently investigative to qualify for the "undisclosed investigation" exemption unless they contain information such as that described by the Hengel court, e.g., such matters as officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests. Id. at 462 (relying on Houston Chronicle Publishing Co.v. City of Houston, 531 S.W.2d 177 (Tex.Civ.App. 1975)). Although I am not a fact-finder in the issuance of Attorney General opinions, in my opinion application of this principle to the incident report you have enclosed should result in release of some of the standard information contained in the report. Other portions may be "sufficiently investigative" as discussed inHengel. It is the responsibility of the custodian of records to make this determination, subject of course to judicial review. These issues will be more fully discussed below.
The Arkansas FOIA applies to "public records," which are expansively defined at A.C.A. § 25-19-103(5)(A) as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
The FOIA states that "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records." A.C.A. §25-19-105(a)(1)(A). The applicable exception in this instance is A.C.A. § 25-19-105(b)(6), which shields "[u]ndisclosed investigations by law enforcement agencies of suspected criminal activity." It has been stated that:
 The need for subsection (b)(6), the basic exemption, is obvious; for example, disclosure of such records would hamper the police in investigating a crime before formal charges have been filed. Also, premature disclosure could be detrimental to persons under investigation but subsequently exonerated of all wrongdoing. Despite these and other compelling reasons for the exemption, it precise meaning is hardly clear. Indeed, it is one of the most ambiguous phrases in the entire FOIA.
Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (4th ed. mm Press 2004) at 114.
The first issue for resolution is whether the Arkansas Game and Fish Commission is a "law enforcement agenc[y]" entitled to the exemption above. The Arkansas Supreme Court has stated that "[t]he exemption includes only agencies which investigate suspected criminal activity under the state penal code and have enforcement powers." Legislative Auditing Committee v. Woosley,291 Ark. 89, 93, 722 S.W.2d 581 (1987).
You rely in this regard on Arkansas Constitution, Amendment 35
(presumably § 8), which provides in pertinent part that "[a]ll employed personnel may make arrests for violation of the game and fish laws." Amendment 35 gives the Commission exclusive power to regulate the manner and taking game and fish and furbearing animals and has the authority to "fix penalties for violations."Id. The Commission does so through its Arkansas Game and Fish Commission Code Book, which contains various wildlife regulations and imposes penalties, including incarceration of up to one year, for violations. See Code, §§ 01.00-H and 01.00-I.
You also cite A.C.A. § 16-81-106(f) (Repl. 2005), a subsection in an Arkansas statute detailing the authority of "certified law enforcement officers" to make arrests. Subsection (f) provides that "For purposes of this section, the term `certified law enforcement officer' includes a full-time wildlife officer of the Arkansas State Game and Fish Commission so long as the officer shall not exercise his or her authority to the extent that any federal funds would be jeopardized." The legislative history of this provision indicates its intention to grant general arrest powers to wildlife officers. That is, it grants those officers the power to make arrests for offenses other than violation of game and fish laws. See, e.g., Acts 715 and 846 of 1989; Uilkiev. State, 309 Ark. 48, 827 S.W.2d 131 (1992) (holding that Act 715 of 1989, which granted general arrest powers to wildlife officers, was impliedly repealed by Act 846 of 1989, which did not include such provision, and reversing and dismissing defendant's DWI conviction due to lack of authority of arresting wildlife officer); and Acts 362 and 436 of 1993 (identical acts readopting a similar provision after the decision in Uilkie).See also, Op. Att'y. Gen. 1991-262, fn1.[1]
The question is whether these citations of law mean that Arkansas Game and Fish Commission wildlife officers "investigate suspected criminal activity under the state penal code and have enforcement powers" as described in Woosley, supra. In my opinion the answer to this question is "yes." Arkansas Game and Fish wildlife officers clearly have "enforcement powers" regarding the state's general criminal laws. This is true notwithstanding that the primary charge of Arkansas Game and Fish wildlife officers is to investigate and enforce violations of the game and fish laws, the majority of which are included in the Arkansas Game and Fish Commission Code Book and not the "state penal code" as mentioned in Woosley, supra. Although the issue is therefore not entirely free from doubt, in my opinion the Game and Fish Commission is in all likelihood a "law enforcement agenc[y]" as that term has been interpreted by the Arkansas Supreme Court.
This conclusion is supported by language from Professors Watkins and Peltz, supra, as follows:
 In light of Woosley, the law enforcement exemption would not cover records of regulatory agencies that have the power to impose administrative sanctions, such as monetary penalties and license revocation, upon those it regulates. By contrast, the Attorney General has indicated that the exemption applies to the Employment Security Department, which has criminal investigative and enforcement powers. [Referring to Op. Att'y. Gen. 1984-039.] Under the same reasoning, the Game and Fish Commission would be able to rely on the exemption, because game wardens are empowered by statute to make arrests for violations of game and fish laws.
Id. at 115 (emphasis added) (footnotes omitted).
In my opinion, therefore, the Arkansas Game and Fish Commission is a "law enforcement agenc[y]" for purposes of A.C.A. §25-19-105(b)(6).
This conclusion does not end the inquiry as to whether the "law enforcement exemption" is applicable, however. Two further inquiries must be made to determine whether records are subject to inspection and copying, or exempt under the "law enforcement exemption." First, it must be determined whether there is an "undisclosed investigation" of "suspected criminal activity" under the exemption, and second, whether the particular records at issue are sufficiently investigative to qualify as records of such an investigation.
As to the first inquiry, despite the literal language of the term "undisclosed investigation," these words have been construed by the Arkansas Supreme Court to mean "ongoing criminal investigations being conducted by law enforcement agencies."Martin v. Musteen, 303 Ark. 656, 660,799 S.W.2d 540 (1990). The court stated that "if a law enforcement investigation remains open and ongoing it is one meant to be protected as `undisclosed' under the act." Id.
You have stated that the documents responsive to the FOIA requests in this instance are "part of open and ongoing federal and state criminal investigations. . . ." The investigation into whether an investigation is open and ongoing "will always be necessarily factual and, as such, beyond the power of this office to conduct." Op. Att'y Gen. 2002-303 at 2. I will therefore assume, as you have asserted, that an ongoing investigation exists with respect to this matter. Because you have indicated that more than one law enforcement agency may be involved, however, a question may arise as to whether there is an ongoing law enforcement investigation pending at the Game and Fish Commission, at the federal level, or both. At least two of my predecessors have had an opportunity to address the application of the law enforcement exemption in the context of interaction between more than one law enforcement agency in such an investigation. The law on this point was discussed in Op. Att'y. Gen. 1992-237, in footnote 2, as follows:
 You have indicated that in some instances, the Department [of the Arkansas State Police] completes its part of an investigation, e.g., takes witness statements, and forwards the records to another law enforcement agency that is assisting in the investigation, maintaining a copy for Department records. I believe the records in the hands of the Department would, in that instance, in all likelihood continue to fall within the so-called" law enforcement investigation" exemption, as long as they are in fact part of the continuing investigation. This office has stated that the location of documents is not necessarily a determinative factor under the FOIA. See Ops. Att'y Gen. 1991-100 [stating general proposition that location not determinative] and 91-323 [tape of executive session, even if attended by unauthorized person and transferred to sheriff's office, remains exempt]. As noted, however, a fact question may arise in this regard.
Id. at 3.
My immediate predecessor also stated in Op. Att'y. Gen. 2002-303
that:
 I should further note the possibility that an investigation might be closed with respect to the police but remain open with respect to the prosecutor. In such an instance, I believe neither the police nor the prosecutor would be warranted in releasing the investigative file. As my immediate predecessor noted in Ark. Op. Att'y Gen. No. 1998-127:
 To allow one agency to release records that are exempt from release by another agency would defeat the purpose of the exemption. For this reason, I conclude that an investigation is not "completed" simply because it is transferred from one agency to another.
Accord Ark. Op. Att'y Gen. No. 2002-149.
Id. at 7. See also Ark. Ops. Att'y Gen. Nos. 2000-225 ("This office has consistently opined that the location of documents should be irrelevant when considering the application of particular exemptions under the FOIA"); and Op. Att'y. Gen.2000-257 at 6: ". . . The mere location of documents generated by an agency should not bear on the question of whether an exemption applies, be it an ongoing-investigation exemption or an employee evaluation exemption."
You have not detailed the exact interaction between the state and federal law enforcement agencies in question with regard to this investigation. I therefore cannot come to any definitive conclusions in this regard. I can state my opinion as a general proposition, however, that investigative documents in the hands of one law enforcement agency related to a particular investigation can be eligible for the law enforcement exemption even though another law enforcement agency is investigating the same matter, as long as the investigation is still open and ongoing.
The final point for discussion is whether particular records are sufficiently investigative to qualify as records of an ongoing investigation for purposes of the exemption. The Arkansas Supreme Court has made clear that not all documents connected with law enforcement are "sufficiently investigative" in nature to qualify for exemption under A.C.A. § 25-19-105(b)(6). Hengel v. City ofPine Bluff, 307 Ark. 457, 821 S.W.2d 761 (1991).
The Hengel case was discussed in Op. Att'y. Gen. 2002-188. At issue in Op. Att'y Gen. 2002-188 was the public's right of access to police department "incident reports" and the field notes that formed the basis for the incident reports. In summarizing theHengel case, my predecessor stated:
 In Hengel, a reporter requested certain arrest reports, incident reports, jail logs, and jail shift sheets that were in the possession of the city's police department. The city argued that these records should be exempt from disclosure under Section 105(b)(6), quoted above, as a part of an undisclosed investigation. The court held that these records were not exempt from disclosure because they were not sufficiently investigative in nature to qualify for the exemption. Although the court stated that the record from the lower court did not clearly indicate the contents of the requested records, it described the "apparent" information that was contained in the jail log, arrest records, and shift sheets. The jail log included the time a suspect was brought to the jail, the name of the arresting officer, the charge, and the time and date of booking. The arrest records contained pertinent personal information about the person arrested, such as the suspect's name, sex, race, and date of birth, what the person was charged with. The arrest records may or may not have stated facts surrounding the arrest. The shift sheets listed the people who were incarcerated, as well as the offense for which each person was arrested, the prisoner's sex, the names of the trustees who were available for work, and the names of the jailer and matron. The court held that this information was not sufficiently investigative in nature to fall within the exemption for undisclosed investigations and should therefore be disclosed to the public.
Id. at 2-3.
You have enclosed with your request the copy of an "incident report" which I assume you deem the responsive record for purposes of the FOIA requests. As noted by Professors Watkins and Peltz, supra, the FOIA request at issue in the Hengel case "sought incident reports along with the records described above, but the Court did not expressly describe incident reports in its opinion or mention them in the holding." Id. at 117. As noted by Professors Watkins and Peltz, however:
 . . . [T]he Court discussed with apparent approval, a Texas case [Houston Chronicle Publishing Co. v. City of Houston, 531 S.W.2d 177 (Tex.Civ.App. 1975)] concluding that certain portions of an "offense report" were available for public inspection. Though the Court did not say so in Hengel, the part of the offense report held to be open included such routine information as details of the offense committed, its location, the name of the complainant, the premises and property involved, the time of the occurrence, a description of the weather, and the names of the investigating officers. Under the reasoning of Hengel, incident reports and other records containing similar information . . . are open for inspection and copying under the FOIA.
 In contrast, the Supreme Court indicated in Hengel
that such information as "officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests" are exempt from disclosure. This material clearly is the type of "internal work product" that lies at the heart of a police investigation, and its disclosure could jeopardize the efforts of law enforcement officials to solve a crime or build a case against a suspect.
Id. at 117-118.
In a similar vein, my predecessor has stated and I agree, that "[t]he Hengel decision provides authority for the proposition that incident reports are not sufficiently investigative to qualify for the `undisclosed investigation' exemption unless they contain information such as that described by the Texas court inHouston Chronicle." Op. Att'y. Gen. 2002-188 at 3. My predecessor noted that this would involve a factual determination in each instance.
I am not empowered as a fact-finder in the issuance of Attorney General opinions, and your request for an opinion does not fall within the specific charge given me in the FOIA with regard to the issuance of opinions in connection with personnel and evaluation records. See A.C.A. § 25-19-105(c)(3)(B). Your opinion requests are presumably submitted under my general authority to provide opinions to certain state officials under A.C.A. § 25-16-706. You have nonetheless enclosed a copy of a particular "incident report" for my "additional information andin camera examination." As noted above, I have not been given any specific statutory charge to review the decision of a custodian of records outside the context of "personnel or evaluation" records. See A.C.A. § 25-19-105(c)(3)(B). Under my general authority to issue opinions, I can only opine upon the applicable law, leaving the decision-making authority to the custodian. To the extent you seek my advisory opinion on the applicable law, it is possible that, as was the case in HoustonChronicle, some portions are subject to inspection and copying under the FOIA, and some portions are properly withheld under the "law enforcement exemption." See also in this regard, OgdenNewspapers, Inc. D/B/A Parkersburg Sentinel Company v. City ofWilliamstown, 192 W.Va. 648, 453 S.E.2d 631 (1994) ("To the extent that information in an incident report dealing with the detection and investigation of crime will not compromise an ongoing law enforcement investigation, we hold that there is a public right of access under the West Virginia Freedom of Information Act," relying on Houston Chronicle).
Partial release of information contained in public records is consistent with the mandate contained in the FOIA that "any reasonably segregable portion of a record shall be provided after deletion of the exempt information." A.C.A. § 25-19-105(f)(2) (Supp. 2005). To the extent the document in question contains some of the routine kinds of information described above, including the details of the offense committed, date, time, location, and name of the officers involved, it is not in my opinion sufficiently investigative to qualify for the A.C.A. §25-19-105(b)(6) exemption.[2] In my opinion, that type of information is subject to inspection and copying under the FOIA. Other portions of the document, however, may include information falling within the more investigative categories of information discussed in Hengel. I cannot determine this issue from a bare review of the document. As custodian of the records, it is your responsibility to make a determination as to which, if any, portions of the record fall, as a factual matter, within the exempt types of information described above, subject of course to judicial review.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] One of my predecessors concluded that a similar act (Act 715 of 1989), was not unconstitutional under the language of Arkansas Constitution, Amendment 35 set out above, stating that ". . . Section 8 of Amendment 35, which does not on its face purport to expressly preclude other arrest powers, does not render Act 715 of 1989 unconstitutional. The constitutional provision does not state that Game and Fish Commission employees `may only make arrests for violation of the game and fish laws.'" Op. Att'y. Gen. 1989-184 at 3.
[2] Of course, other specific exemptions from disclosure may have to be considered. See, e.g., Ops. Att'y. Gen. 2005-113; 2003-257 and 2003-115 (requiring redaction of drivers' license numbers contained in law enforcement records).