Mr. James A. Bacon Chief of Police Russellville Police Department 115 West "H" Street Russellville, AR 72801
Dear Chief Bacon:
I am writing in response to your request for an opinion concerning the release of records pursuant to the Arkansas Freedom of Information Act ("FOIA") (A.C.A. §§ 25-19-101 through — 109 (Repl. 2002) and (Supp. 2005)). You have enclosed a FOIA request that was submitted to your department seeking, in relevant part, "all complaints made against the Russellville Police Department in the last 20 years concerning excessive use of force or harassment." You state as follows regarding that request:
 During the course of reviewing files since my tenure as Chief of Police, I have identified one file that I believe is subject to the request. I have also reviewed the file with our City Attorney, Trey Smith, and he also concurs with my decision. However, the officer challenges the decision saying the case does not constitute harassment since the complainant did not specify that allegation nor was he punished for harassment.
You have provided a copy of the file, which involves a particular complaint that led to an officer's suspension and which, primarily, documents the complaint and internal investigation of the matter. Following a brief synopsis of the case, you ask for my opinion "on whether release of the file is consistent with the FOIA request or if it should be denied."
RESPONSE
As a preliminary matter, I must note my uncertainty regarding the exact focus of your question. I have the impression that you are concerned whether you have properly identified this file in response to the FOIA request. It seems there is a dispute whether the file you have identified is responsive to the request. This prompts me to briefly clarify the respective duties assigned to the records custodian and this office under the FOIA.
As custodian, you must locate and provide copies of public records that have been requested pursuant to the FOIA, assuming that the request is "sufficiently specific." A.C.A. §§25-19-105(a)(2)(A) ("A citizen may make a request to the custodian to inspect, copy, or receive copies of public records[;]" 25-19-105(a)(2)(C) ("The request shall be sufficiently specific to enable the custodian to locate the records with reasonable effort[;]" 25-19-105(d)(2)(A) ("Upon request and payment of a fee . . . the custodian shall furnish copies of public records if the custodian has the necessary duplicating equipment.") In the event the requester seeks access to "personnel or evaluation records," you must "determine within twenty-four (24) hours of the receipt of the request whether the records are exempt from disclosure and make efforts to the fullest extent possible to notify the person making the request and the subject of the records of that decision." Id. at (c)(3)(A). Your decision regarding any exemption in connection with such personnel or evaluation records may then be subjected to my review in accordance with A.C.A. § 25-19-105(c)(3)(B)(i), which states that "[e]ither the custodian, requester, or the subject of the records may immediately seek an opinion from the Attorney General, who, within three (3) working days of receipt of the request, shall issue an opinion stating whether the decision is consistent with this chapter."
As you can see, my duty to issue an opinion under A.C.A. §25-19-105(c)(3)(B) arises after the records have been located and is limited to reviewing the custodian's decision as to "whetherthe records are exempt from disclosure." A.C.A. §25-19-105(c)(3)(A), supra (emphasis added). I am authorized only to review your determination regarding what documents are subject to release, not to advise you in your initial selection of responsive documents. See Op. Att'y Gen. 2005-175. Accordingly, I am neither authorized nor equipped to opine on your identification of personnel or evaluation records in response to this FOIA request. Identifying records responsive to the request is a task uniquely within your purview, both as a statutory matter and as a practical matter because it requires factual determinations that are outside the scope of an opinion from this office. See Op. Att'y Gen. 2005-104. Consequently, to the extent you seek my review of your determination that the enclosed file is responsive to the FOIA request in this instance, I must decline to issue an opinion.
Assuming, however, that you also seek my opinion regarding the release of records in response to the FOIA request in this instance, I must note that you have not specifically indicated what decision you have made concerning the file's release. Without knowing that decision, I cannot perform my duty under A.C.A. § 25-19-105(c)(3)(B)(i) to "issue an opinion stating whether the decision is consistent with [the FOIA]." Under the circumstances, I can do no more than set forth the standards I believe you should apply in reviewing the file, which appears to contain both employee evaluation/job performance records and personnel records.[1]
Personnel Records
"Personnel records" must be released except to the extent their release would constitute a "clearly unwarranted invasion of [the employee's] personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2005). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase and adopted a balancing test to determine if it applies, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992). The court in Young noted that "[b]ecause section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored." 308 Ark. at 598. As the court also noted in Stilley v. McBride, 332 Ark. 306, 312, 965 S.W.2d 125
(1998), however, when "there is little relevant public interest" in disclosure, "it is sufficient under the circumstances to observe that the employees' privacy interest in nondisclosure is not insubstantial." Given that exemptions from disclosure must be narrowly construed, it is the burden of an individual resisting disclosure to establish that his "privacy interests outweigh
that of the public's under the circumstances presented." Id. at 313.
Employee Evaluation/Job Performance Records
Under the FOIA's applicable standard, employee evaluation/job performance records are exempt from disclosure to the public unless the following three conditions have been met:
 • There has been a final administrative resolution of any suspension or termination proceeding;
 • The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 • There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1) (Supp. 2005).
As I have previously observed, "[t]his office has concluded on various occasions that any document up to and including a notice of suspension or termination that details the reasons for the disciplinary action should be deemed to have "formed a basis" for that action. Op. Att'y Gen. 2005-175 (citing Ops. Att'y Gen. Nos.2005-112, 2005-030, 2003-381, 2002-158, 2002-144, 97-415, and 95-171). With regard to the requirement of a "compelling public interest," it should be noted that the FOIA at no point defines the phrase "compelling public interest." However, two leading commentators on the FOIA have provided some guidelines for making the factual determination whether such an interest exists. See
J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004). The authors state, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Id. at 205. They further observe: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. at 204, 205. Elaborating on this point, they remark: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 207. They additionally note that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 206 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue."). However, Professors Watkins and Peltz note that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police." Id. at 207.
The question of whether there is a compelling public interest in particular records is clearly one of fact that must be determined in the first instance by you, as the custodian of the records, considering all of the relevant surrounding information. This should include the potential public impact of the misconduct at issue. Because it appears that the conduct in this instance involved departmental rules violations, it is also relevant to quote the following observation of one of my predecessors:
 With regard to the existence of a "compelling public interest in disclosure". . ., it is my opinion that the nature of the problem that led to the suspension compels disclosure in this instance where the activities detailed in the records violated administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety. See generally J. Watkins, The Arkansas Freedom of Information Act 135 (2nd ed. 1994) (discussing the "compelling public interest" question).
Op. Att'y Gen. No. 1997-400. See also Op. Att'y Gen. 2006-106
(quoting the above and opining that the custodian properly decided to release internal investigation records that reflected a violation of departmental rules by a "cop on the beat" in his interactions with the public) and Op. Att'y Gen. 2005-175
(commenting that "the factual context in which a violation occurs might prove of paramount importance in determining whether a compelling public interest in disclosure exists.").
Constitutional Right of Privacy
You should further be aware that any party who is identifiable from any of the requested records may have a constitutionally-protected privacy interest in those records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information.See McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
The question of whether information is protectable under the constitutional right of privacy is a question of fact that must be determined in the first instance by the custodian of the records, on the basis of the facts of the case. If the custodian of the records determines factually that the records contain constitutionally protectable information (i.e., information that meets the three prongs of the test laid out by the McCambridge
court), the custodian must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their nondisclosure. As always, the person claiming the right will have the burden of establishing it. Although I find it unlikely that the records in the file you have identified would meet the McCambridge test for protectable constitutional privacy, this determination will be a factual one, based upon the information available to the custodian.
As a final note, it should be mentioned that there is no protection under the FOIA for information pertaining to a confidential informant. As previously noted by this office (see
Ops. Att'y Gen. Nos. 2002-149 and 90-305), the Arkansas Supreme Court has clearly indicated that the FOIA contains no provision protecting the identities of and substantive information provided by confidential informants. See Martin v. Musteen,303 Ark. 656, 799 S.W.2d 540 (1990) and McCambridge, supra. The court inMartin made clear that only the legislature could craft a special exemption applying to confidential informants.303 Ark. at 58.
In summary, you must review all of the documents that you have determined fall within the scope of the request under the standards discussed above. This review will of necessity be factual in nature and may entail consulting with the city attorney. Because you have not specifically indicated what decision you have made concerning the file's release, I cannot opine whether that decision is consistent with the FOIA.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] This office has consistently taken the position that any records that were created at the behest of an employer and that detail the performance or lack of performance of an employee with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records.See, e.g., Ops. Att'y Gen. Nos. 98-006, 97-222, 95-351, 94-306, and 93-055. This would include records in an internal affairs file that have been generated at the behest of the employer in the course of investigating a complaint against the employee.See, e.g., Op. Att'y Gen. 2006-106 (and opinions cited therein). Records relating to an internal investigation that were not created at the behest of the employer, such as an unsolicited complaint, are properly classified as "personnel records." Additionally, this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records that relate to the individual employee. See, e.g., Ops. Att'y Gen. 2004-178, 2003-336, 2003-055, 2002-085, 2001-154, and 99-147.